A.L. HUBER & SON, INC./Clevenger Homes, Inc., Joint Venture, Appellants,

v.

JIM ROBERTSON PLUMBING, INC., Respondent.

No. WD 40210.

Missouri Court of Appeals, Western District.

Sept. 27, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 1, 1988.

Application to Transfer Denied Dec. 13, 1988.

J. Michael Cronan, Kansas City, for appellants.

Vincent F. Igoe, Jr., Liberty, for respondent.

Before COVINGTON, P.J., and CLARK and GAITAN, JJ.

GAITAN, Judge.

This is a three-count claim for money damages filed by the plaintiff-appellant, A.L. Huber & Son, Inc./Clevenger Homes, Inc., Joint Venture, regarding an alleged oral contract entered into with the defendant-respondent, Jim Robertson Plumbing, Inc. The plaintiff-appellant appeals the judgment of the trial court finding that: (1) the defendant-respondent did not enter into an agreement with the alleged A.L. Huber/Clevenger Homes Joint Venture for performance of work on the project; (2) any alleged reliance by the Huber/Clevenger Joint Venture was unauthorized and unwarranted; and (3) the defendant-respondent's actions were not tortious, malicious, or intended to injure plaintiff-appellant.

The judgment of the trial court is affirmed.

This action arises out of a series of events concerning plumbing work to be done on the Three Fountains West project. The plaintiffs, A.L. Huber & Son, Inc. (A.L. Huber) and Clevenger Homes Company, Inc. are two separate corporations. Clevenger Homes initially submitted a bid to do construction on the Three Fountains West townhouse complex. All bids submitted to the project owner on February 11, 1986, were rejected. However, since Clevenger Homes was the lowest bidder, it was allowed to revise the project and submit another proposal.

In February of 1986, Clevenger contacted Jim Robertson Plumbing regarding plumbing work in the construction of the Three Fountains West project. Mr. Clevenger spoke with Robertson and gave him information to prepare a bid. The conversation also incorporated a discussion of changes to the original plans and specifications. Jim Robertson Plumbing picked up the original specifications and one set of drawings from Clevenger's office some time after February 11, 1986. The original bid from Jim Robertson Plumbing was for $223,756. However, on March 8, 1986, the bid was reduced to $218,686 because garage floor drains were omitted. Mr. Robertson testified that he was making the bid to Clevenger should Clevenger be awarded the general contract for the Three Fountains West project, and if the plans and specifications came back to Robertson in the form agreed.

The bid and discussion with Jim Robertson Plumbing occurred before negotiations began between A.L. Huber and Clevenger Homes concerning the joint venture. The need for a joint venture arose because Clevenger Homes could not obtain a satisfactory bond to do the work on the Three Fountains West project. Therefore, Clevenger Homes entered into a written joint venture agreement with A.L. Huber in April of 1986.

A.L. Huber signed a contract with the project owner as the general contractor. Clevenger Homes was listed as a subcon-

tractor and received $40,000 for partial supervision of the project, and was to have received $30,000 up front to cover expenses. Clevenger Homes was not a guarantor on the bond that A.L. Huber obtained. The subcontract with A.L. Huber was dated June 1, 1986, but the typed contract date was May 20, 1986.

At around the end of April or beginning of May, 1986, Robertson was contacted by David Dukes, project manager for A.L. Huber. Mr. Dukes confirmed the $223,756 price and the deduction of $5,070 for omitting the garage floor drains. There was no discussion of specific terms other than the price. Mr. Robertson stated that it was not uncommon in the industry for employees of one company to "moonlight" as estimators for another company. However, Dukes testified that he stated to Robertson that he was calling on behalf of a joint venture between A.L. Huber and Clevenger Homes. To the knowledge and recollection of Robertson, Dukes did not tell him that A.L. Huber and Clevenger Homes had entered into a joint venture. Mr. Robertson and Dukes talked again near the end of May, 1986. Each time Dukes called, Robertson confirmed his bid.

In the middle of June, 1986, someone from Dukes' office called Jim Robertson Plumbing to inform them that revised plans and specifications were available. However, neither Robertson nor anyone from his office ever picked up the plans or returned the signed subcontract.

Mr. Robertson learned for the first time that A.L. Huber was the general contractor on the Three Fountains West project in late June. Mr. Robertson had informed his staff, prior to leaving on a trip at the end of June, to not agree to do work for A.L. Huber because of previous bad experiences between A.L. Huber and Jim Robertson Plumbing. Mr. Glover, the on-site superintendent for A.L. Huber, called Jim Robertson Plumbing the week prior to July 7 to inform them that work would be required to begin on July 7, 1986. He was told that Jim Robertson Plumbing was not going to perform the plumbing work on the contract.

A.L. Huber eventually contracted with Superior Plumbing to do the plumbing work on the Three Fountains West project for $252,694 based on the revised plans and specifications.

■ The question for an appellate court in a court-tried case is whether the findings of the trial court are supported by substantial evidence. Unless the judgment is against the weight of the evidence, or unless the court erroneously declares or applies the law, the judgment will be affirmed. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

## I. Promissory Estoppel

■ Appellant's first contention is that the trial court erred in finding that respondent, Jim Robertson Plumbing is not legally liable under a theory of promissory estoppel. This Court agrees with the trial court's finding. The essential elements that need to be proved under a theory of promissory estoppel are: (1) a promise; (2) detrimental reliance on the promise; (3) injustice can be avoided only by enforcement of the promise; and (4) the promisor should have or did in fact clearly foresee the precise action which the promisee took in reliance. *Mark Twain Plaza Bank v. Lowell H. Listrom & Company, Inc.*, 714 S.W.2d 859, 863 (Mo.App.1986); *Otten v. Otten*, 632 S.W.2d 45, 49 (Mo.App.1982).

■ The *Mark Twain Plaza Bank* case is heavily relied on by the appellants. In that case the plaintiff bank obtained both an unconditional oral and written commitment from a stock brokerage firm that certain stock held by the firm would be available as collateral and could be transferred to the bank. The case at bar is distinguishable from the *Mark Twain Plaza Bank* case in that there was a *conditional* promise made by Jim Robertson Plumbing that Clevenger Homes be the general contractor on the Three Fountains West project. Here, the facts state that A.L. Huber was the general contractor while Clevenger Homes was a subcontractor. Upon cross-examination, Clevenger confirmed this conditional promise:

Q: Now as to what your agreement was with Mr. Robertson, you didn't get the job did you?

A: I didn't directly contract it.

Q: Well, sir, who signed the contract to build it?

A: Huber did.

Q: All right, sir. So the first condition you made with Robertson, you didn't fulfill—you didn't get the contract, true?

A: That's true.

Since the conditions of the promise were not met, neither Clevenger Homes nor A.L. Huber could have relied on the promise. The promissory estoppel principle is "not predicated on misstatement of fact but rather rests upon *a promise* on which a party relies." *Mark Twain Plaza Bank, supra,* at 863; Corbin, *Contracts* § 140 at 607–08.

Additionally, neither the fourth element of detrimental reliance nor foreseeability could have been met. There is undisputed evidence that all direct communications between Clevenger and Robertson occurred prior to any discussions of a joint venture. The facts show that Jim Robertson Plumbing dealt with Clevenger Homes in confirming its bid. Although Dukes indicated that he was helping A.L. Huber or was calling on behalf of the joint venture, the record indicates that it was Robertson's knowledge that it was not uncommon for employees of one company to moonlight as estimators for another company. Evidentally, there is a conflict in testimony as to whether Dukes advised Robertson that he was calling on behalf of the joint venture. "Conflicts in the evidence [are] for the trial court to resolve, and the facts must be taken in accordance with the result reached by the trial court." *Trenton Trust Company v. Western Surety Company,* 599 S.W.2d 481, 483 (Mo. banc 1980). In deferring to the trial court's resolution of the conflicting evidence that Robertson believed that Dukes was moonlighting as an estimator, there was no contract or promise made to A.L. Huber or the joint venture by Robertson. Therefore, there could not have been any detrimental reliance, and Jim Robertson Plumbing could not have foreseen either A.L. Huber or the joint

venture relying on the plumbing bid for the Three Fountains West project.

In the absence of evidence to show the existence of the requirements for promissory estoppel, the theory cannot be invoked. *Rose v. Howard,* 670 S.W.2d 142, 147 (Mo. App.1984). Thus, the theory fails in this instance.

II. Tortious Interference

Appellant's second contention is that the trial court erred in its determination that there was no tortious interference on the part of Jim Robertson Plumbing.

■ The essential elements for a tortious interference claim are: (1) a contract or valid business relationship or expectancy; (2) defendant's knowledge of the contract or relationship; (3) intentional interference in inducing or causing breach of the contract or expectancy; (4) absence of justification; and (5) resulting damages. *Community Title Co. v. Roosevelt Federal S & L Ass'n,* 670 S.W.2d 895, 904–05 (Mo. App.1984); *American Bank of Princeton v. Stiles,* 731 S.W.2d 332, 343 (Mo.App. 1987).

■ Liability under a tortious interference theory "cannot be predicated upon speculation, conjecture or guesswork, and no fact essential to submissibility can be inferred absent a substantial evidentiary basis." *Community Title Co., supra* at 905 (citing *Francisco v. Kansas City Star Co.,* 629 S.W.2d 524, 529 (Mo.App.1981)). The test for showing that there was tortious interference is essentially the "but for" test for causation. *See Community Title Co., supra,* at 905; *see also American Bank of Princeton, supra,* at 344. It is the party who is claiming tortious interference who must prove that the other party "actively and affirmatively took steps to induce the breach and that the expectancy would have come to fruition but for the actor's improper conduct." *American Bank of Princeton, supra,* at 344. In the case at bar, Clevenger Homes and A.L. Huber failed to establish that there was an expectancy or contract between Jim Robertson Plumbing and the alleged joint venture or A.L. Huber. The evidence indicates that Jim Robertson Plumbing did not know

that A.L. Huber or the joint venture were to be a party to the Three Fountains West project. There was no inducement or improper conduct on the part of Jim Robertson Plumbing. The trial court found that there was no evidence that either Clevenger Homes or the joint venture were parties to the contract with the Three Fountains West project owner. The only contract entered into was between A.L. Huber and the project owner. Thus, since there was no contract there could not have been a breach, and the claim of tortious interference fails.

### III. Joint Venture

■ Appellant's final contention is that the trial court erred in finding that a joint venture did not exist between the appellants, and that the contract entered into with the project owner was made by A.L. Huber as a separate corporate entity. The trial court did not make a finding that a joint venture did not exist. However, instead, the court explicitly found that Jim Robertson Plumbing did not contract with the joint venture, and that there was no contract between the project owner and the joint venture; only with A.L. Huber. Whether or not the trial court found that a joint venture did or did not exist would not change the findings of the court. The evidence presented to the trial court explicitly showed that Jim Robertson Plumbing only dealt with Clevenger Homes prior to any joint venture discussions, and the contract with the project owner was only in the name of A.L. Huber.

There is substantial evidence in the record to support the trial court's finding, and the finding is not against the weight of the evidence. *Murphy v. Carron*, 536 S.W. 2d 30, 32 (Mo. banc 1976); *Trenton Trust Company v. Western Surety Company*, 599 S.W.2d 481, 483 (Mo. banc 1980).

The judgment of the trial court is affirmed.

All concur.