John H. HICKHAM, D.D.S.,
Plaintiff–Appellant,

v.

Raymond CHRONISTER,
Defendant–Respondent.

No. 55586.

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 21, 1989.

David Laurence Smith, St. Louis, for plaintiff-appellant.

Joe A. Johnson, Arnold, for defendant-respondent.

CARL R. GAERTNER, Judge.

This action was commenced by plaintiff seeking to obtain possession of plastic injection molds fabricated by defendant pursuant to a contract. Having successfully obtained possession, plaintiff now appeals from the judgment of the trial court ordering him to pay the contract price for the molds. We affirm.

Plaintiff is an orthodontist who also designs and sells orthodontic appliances. Defendant is a tool and dye maker engaged in the fabrication of plastic injection molds. In 1983, plaintiff approached defendant regarding the manufacture of a saliva ejector consisting of a cheek retractor and a tongue depressor which plaintiff had designed. After some discussion they entered into a contract on January 12, 1984, in which defendant agreed to fabricate a cheek retractor mold for $8,500 and a tongue retainer for $9,735. The contract also provided a per unit price for parts made from these molds. In accordance with the terms of the contract, plaintiff paid defendant $9,000, the balance to be due upon completion of the molds and acceptance of the parts. Defendant also agreed to fabricate a mold for a safety wire latch designed by plaintiff at a price of $2,875.

Plaintiff furnished defendant with a design of the products for which the molds were to be manufactured. From these designs, defendant prepared blue prints which were modified by plaintiff. Over the ensuing months the parties had numerous discussions concerning modifications of the original design. Eventually, plaintiff approved the blue prints as modified. Sample parts were sent to plaintiff in June or July, 1984, but they were not satisfactory. All changes made in the mold were in accordance with plans and specifications either made or approved by plaintiff. As late as January, 1985, plaintiff sent defendant a letter including drawings of changes plaintiff wanted made. Finally, in February 1985, after receiving samples he considered unacceptable, plaintiff directed defendant to cease and desist from any further work and cancelled the contract.

In July, 1984, defendant sent plaintiff a bill for the safety wire latch mold in the amount of $2,875. In December, 1984, a bill for the cheek retractor and tongue depressor molds for the balance due of $9,235 was sent to plaintiff. Both bills stated "PAY on APPROVEL [sic]". Although neither bill was paid, defendant took no action to recover the unpaid balance.

Two years after plaintiff cancelled the contract on February 6, 1987, plaintiff commenced this litigation by filing a petition seeking possession of the cheek retractor and tongue depressor molds pursuant to sections 430.400–430.407 RSMo.1986. Section 430.403 establishes a lien upon molds made by a plastic fabricator for the amount due from a customer for plastic fabrication work. Section 430.405 provides for the court to order possession of such a mold be returned to the customer upon payment into court of the amount claimed by the fabricator, plus interest and costs, or the filing of a sufficient bond approved by the court. Upon the filing of plaintiff's petition in this case, the court approved a bond in the sum of $12,110, the outstanding balance of the contract price, and ordered defendant to deliver the molds. On February 9, 1987, defendant complied and delivered the molds to plaintiff's attorney. On February 18, 1987, defendant filed a counterclaim seeking payment of the unpaid balance on the contract in the amount of

$12,110. In an Answer to this counterclaim, plaintiff alleged as affirmative defenses breaches of express and implied warranties of fitness and merchantability. Subsequently, plaintiff filed an amended petition seeking to recover as damages for these alleged breaches of warranties the $9,000 down payment and an additional $12,270 allegedly paid to other manufacturers for satisfactory manufacture of the molds.

On these pleadings the case was tried without a jury. The court found "defendant agreed to fabricate a mold that would produce the cheek retractor and tongue depressor designed by plaintiff and that's what he did." Further, the court concluded that because plaintiff furnished the technical specifications plaintiff could not rely upon an implied warranty of fitness for a particular purpose. Accordingly, the court entered judgment for defendant on the counterclaim in the amount of $12,110 and dismissed plaintiff's amended petition. From this judgment plaintiff appeals.

When reviewing the decision of the trial court, this court must sustain the trial court's decision unless the judgment is not supported by substantial evidence, the judgment is against the weight of the evidence, or the judgment erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976). In reviewing a bench trial where no findings of fact or conclusions of law were requested, we must view the evidence in the light most favorable to the prevailing party and disregard the contrary evidence. If the trial court's decision can be upheld on any reasonable theory supported by the evidence, the judgment must stand. *Hackmann v. Sommerfor Development Corp.*, 741 S.W.2d 857, 859 (Mo.App.1987). Thus, all fact issues are deemed found in accordance with the results reached by the trial court. Rule 73.01(a)(2); *In Re Marriage of Schatz*, 768 S.W.2d 607, 612 (Mo.App.1989).

Plaintiff asserts two points on appeal: 1) trial court error in finding in favor of defendant because the evidence shows plaintiff never "accepted" or "approved" the molds or the parts produced, a condition of the contract, and, 2) trial court error in finding that the implied warranty of fitness for a particular purpose was not applicable.[1]

■ The contract provided that payment of the balance of the price became due "upon completion of the mold and acceptance of the parts." The invoices provided for "Payment on Approval [sic]". Plaintiff argues that because he never accepted parts and never approved the molds these conditions of the contract were not met. In response, defendant contends plaintiff's refusal to accept the parts and to give his approval was arbitrary, unreasonable and not in good faith. Defendant's theory does uphold the decision of the trial court and it is supported by defendant's testimony that plaintiff never complained about the safety wire latch and that the original defects in the saliva ejector components had been corrected so that the final sample parts sent to plaintiff were satisfactory. Where performance of a contract is to be to the satisfaction of the promisor, he must exercise that judgment in good faith and as a reasonable man, not arbitrarily without a bona fide reason for his dissatisfaction. *Long v. Huffman*, 557 S.W.2d 911, 916 (Mo.App.1977).

■ Moreover, our reading of the entire record discloses an even more basic principle which supports the decision of the trial court. A party who repudiates a contract may not retain the benefit of the bargain without paying what he agreed to pay for such benefit. Plaintiff's position might be more tenable had he merely sued to recover his down payment after advising defendant in February, 1985, that the contract was cancelled. Instead, two years

---

1. Plaintiff argues that he should be entitled to the return of his $9,000 down payment. He has therefore apparently abandoned the claim of his amended petition for an additional $12,270 allegedly paid to other manufacturers to produce acceptable molds. In any event, the evidence indicates the parts produced by the substitute molds were not identical to the design plaintiff furnished to defendant and the evidence pertaining to the cost of the replacement molds was insufficient to establish his claimed measure of damages.

later, plaintiff instituted this litigation demanding and obtaining possession for the fabrication for which he had promised to pay a total of $18,235. Even assuming that plaintiff's cancellation of the contract was justified, his subsequent demand for possession of the product nullifies this repudiation and constitutes acceptance in fulfillment of the contract and renders him liable for the contract price. *Paramount Sales Co., Inc. v. Stark,* 690 S.W.2d 500, 505 (Mo.App.1985).

This principle is applicable notwithstanding plaintiff's testimony that he filed this suit for possession of the molds only to prevent defendant from selling them to a competitor. The trial court was not required to believe this testimony even though not disputed. *Terre Du Lac, Inc. v. Fuhrmeister,* 753 S.W.2d 4, 5 (Mo.App. 1988). Furthermore, plaintiff's motive in demanding that defendant deliver the molds to him is irrelevant. It is conduct inconsistent with his rejection of the product and his repudiation of his agreement to pay the contract price.[2]

■ The same inconsistency afflicts plaintiff's second point on appeal: trial court error in holding the implied warranty of fitness for a particular purpose to be inapplicable. If, as plaintiff contends, the molds fabricated by defendant failed to produce usable parts and were worthless, there was no need for plaintiff to obtain possession of the molds in order to keep them from a competitor threatening to produce the same product.

Further, under the evidence in this case, the trial court did not err in concluding that no warranty of fitness for a particular purpose arises "where the buyer has taken upon himself the responsibility of furnishing the technical specifications." Section 2–315, Uniform Commercial Code, Comment 2; *Controltek, Inc. v. Kwikee Enterprises, Inc.,* 284 Or. 123, 585 P.2d 670, 673 (1978). Plaintiff acknowledges this principle, but argues it has no applicability to this case because he contracted only for the manufacture of a product and relied upon defendant's expertise to fashion molds to accomplish the desired results. Plaintiff's own testimony belies this contention. Plaintiff admits that every stage of the specifications and blue prints of the molds was controlled by him. He ordered modifications of the original plans and nothing was done by defendant which plaintiff did not authorize. Plaintiff agreed that "everything that was done on that mold was done in accordance with plans and specifications that [he] had made or that [he] approved."

Plaintiff's reliance upon two federal court decisions is misplaced. Plaintiff's control over every stage of the design of the molds clearly distinguishes this case from *Singer v. E.I. du Pont de Nemours & Co.,* 579 F.2d 433 (8th Cir.1978) in which the court stated: "This was not a situation where a buyer ordered to specifications and then claimed an implied warranty of fitness when a product failed to measure up to expectations." *Id.* at 439. Nor is this case analogous to *Ingram River Equipment, Inc. v. Pott Industries, Inc.,* 573 F.Supp. 896 (E.D.Mo.1983), wherein an express provision of the contract stated "the detailed manner and method of performing work shall be under the control of seller (Pott), buyer (Ingram) being interested only in the results obtained." *Id.* 573 F.Supp. at 902; 816 F.2d 1231, 1235 (8th Cir.1987). Plaintiff's argument that he was only interested in the parts produced stands starkly in contrast to his testimony that he controlled and approved every design and specification for blue prints from which the molds were made.

Although not cited by either party, *Price Bros. Co. v. Philadelphia Gear Corp.,* 649 F.2d 416 (6th Cir.1981) presents facts much more in accord with those of the instant case. In *Price,* the plaintiff ordered parts to be manufactured by the defendant. The specifications were jointly arrived at by engineers of buyer and seller. This fact was held to preclude a finding that the buyer relied upon the seller's skill and ex-

---

**2.** Plaintiff testified he had been granted a patent on the saliva ejector through which he could have adequately protected himself from compe-

tition without resorting to conduct inconsistent with his repudiation of the contract.

pertise, an essential element of an implied warranty of fitness for a particular purpose under section 2–315 of the Uniform Commercial Code (§ 400.2–315, RSMo. 1986). *Id.* at 423.

Plaintiff makes no complaint that the molds were defectively made or that they failed to conform to the design and specifications he authorized and approved. As stated in *Price Bros.*, "where a specific item as delivered fits the description called for by the buyer, there is no breach [of the implied warranty of fitness for a particular purpose] when the contemplated use of the goods proves inappropriate to their inherent capabilities and design." *Price Bros.* at 423, quoting from *Standard Packaging Corp. v. Continental Distillery Corp.*, 378 F.2d 505, 508 (3rd Cir.1967).

The judgment of the trial court is amply supported by the evidence and does not erroneously declare or apply the law. Accordingly, the judgment is affirmed.

STEPHAN and HAMILTON, JJ., concur.