**ROLSCREEN COMPANY, an Iowa Corporation, Appellee,**

v.

**PELLA PRODUCTS OF ST. LOUIS, INCORPORATED, a Missouri Corporation, Appellant.**

No. 94–3910.

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1995.

Decided Sept. 5, 1995.

1204

James Robert Keller, St. Louis, MO, argued (Robert G. Allbee, Des Moines, IA, on the brief) for appellant.

Alan H. Silberman, Chicago, IL, argued (Catherine A. Van Horn, Chicago, IL and Kim Walker, Des Moines, IA, on the brief), for appellee.

Before BEAM and MURPHY, Circuit Judges, and VAN SICKLE,* Senior District Judge.

DIANA E. MURPHY, Circuit Judge.

After a jury returned its verdict for Rolscreen Company (Rolscreen) during the first

* The HONORABLE BRUCE M. VAN SICKLE, Senior United States District Judge for the District of North Dakota, sitting by designation.

phase of a bifurcated trial, the district court [1] dismissed the remaining counterclaims brought by Pella Products of St. Louis, Inc. (Products), one of Rolscreen's distributors, and entered judgment for Rolscreen. Products appeals from that judgment. We affirm.

## I.

Rolscreen, which manufactures windows, doors, and skylights, has its headquarters in Pella, Iowa. Products, a Missouri corporation located in St. Louis, became an independent distributor for Rolscreen in 1968. For the next fifteen years, Rolscreen and Products did business without a written agreement. In 1983, Rolscreen executed a distribution agreement with each of its distributors around the country, including Products. This case grows out of the end of the parties' relationship in 1992.

Products was a successful distributor for many years and sold Rolscreen products both in eastern Missouri and southwestern Illinois, but its market share declined in the late 1980s. Claiming to be unhappy with the declining sales performance, Rolscreen sent a letter to Products on March 8, 1991, outlining the market share and profit goals it expected the distributor to reach. The letter indicated that Products' distribution agreement would be terminated on December 1, 1991 if it could not meet those objectives.

Walter Blaine, the owner of Products since 1968, believed the goals set by Rolscreen were unrealistic and began looking for someone to buy his company. Meanwhile, Rolscreen wrote Products on November 15 to note that the termination date was only two weeks away, but wrote again on November 26 to extend that date until March 1, 1992. The November 26 letter explicitly stated that the existing distribution agreement would

continue to apply until the termination and that the extension would permit Rolscreen to gather all data on the distributor's performance through November 30 and would give Walter Blaine more time to sell his business.

Shortly after granting the extension, Rolscreen filed this case in the Southern District of Iowa seeking a declaratory judgment that its conditional termination of Products would be proper under the distribution agreement. Two months later in February 1992, Products in turn filed a complaint in the Eastern District of Missouri seeking damages and a preliminary injunction. Products also moved to dismiss the case filed by Rolscreen or to have it transferred to Missouri; these motions were denied.

As the March 1 termination date approached, Products was continuing negotiations with a potential buyer, and Rolscreen granted another extension with an indefinite termination date. On April 23 when no sale had been consummated, Rolscreen wrote again, setting a termination date of April 30, 1992.[2] In order to obtain more time to complete the sale, Products planned to seek a temporary restraining order to prevent Rolscreen from terminating the agreement. In response, Rolscreen agreed to extend the termination date to May 7, 1992, and also committed to fill Products' orders until the sale closed if a sale agreement were signed by May 7. Products and its purchasers signed a sale agreement on May 2, 1992. The sale closed on July 28, and the purchasers became the new distributor for Rolscreen.

The litigation became consolidated in the Southern District of Iowa. Products' case in Missouri was dismissed in October 1992, on the grounds that Rolscreen's was filed first.

---

1. The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa.

2. The April 23 letter read in part:
 Dear Walt:
 It has been over one year since we originally placed Pella of St. Louis on conditional termination. . . .
 . . . .
 As you must know, we have bent over backwards to give you every possible consideration by repeatedly extending the termination date,

but we cannot allow this situation to continue indefinitely. Rolscreen's interests require us to be able to market our products in the St. Louis area in an effective way, with distribution arrangements of our own choosing. Therefore, we are advising you that the termination, of which you previously received notice, will take effect as of the close of business on April 30, 1992, and that we will not accept orders from you after that date.
 . . . .

One month later, Products filed counterclaims in this case for recoupment, breach of contract, tortious interference, promissory estoppel, prima facie tort, and violation of the Illinois Franchise Disclosure Act.

In September 1993, the district court dismissed Rolscreen's complaint and Products' counterclaims for promissory estoppel and tortious interference. Since there was no longer any relationship between the parties, the complaint for a declaratory judgment was moot. The district court then decided in June 1994 to bifurcate the trial on the remaining counterclaims. The first phase would focus on whether Rolscreen had terminated the distribution agreement with Products and whether Products was a franchisee under the Illinois Franchise Disclosure Act.

After several days of testimony in August 1994, a jury decided that Rolscreen had not terminated the agreement and that Products was not a franchisee. Rolscreen then moved to dismiss the remaining counterclaims. After Products made an oral proffer of the evidence it would present in the second phase, the court concluded that its showing was insufficient and granted Rolscreen's motion to dismiss. Judgment was entered in Rolscreen's favor, and Products' motion for judgment as a matter of law or a new trial was denied.

Although the background facts are largely undisputed, the parties interpret them differently. Products believes that Rolscreen wrongfully terminated the agreement in April 1992. It believes that its performance was not unsatisfactory so that Rolscreen was not entitled to use the agreement's conditional termination provision. Products also asserts that Rolscreen had improper motives for terminating the agreement, including a desire to award the St. Louis distributorship to a former Rolscreen vice president and a dislike for Kenneth Blaine, Walter Blaine's choice as his successor at Products. Rolscreen contends that the relationship between the parties was not terminated within the meaning of the contract, but rather ended when the sale of Products was concluded in July 1992. It believes that the issuance of the conditional notice of termination was proper under the agreement and was based on legitimate business concerns.

## II.

Products first challenges several decisions of the district court made before trial. Products argues that the court erred when it granted summary judgment to Rolscreen on the tortious interference and promissory estoppel counterclaims and when it denied its motions to transfer the case to Missouri.

Products' counterclaims for tortious interference and promissory estoppel are based on the assertion that Rolscreen had approved Products' succession plan. Products says it prepared a written plan in 1982 to provide that Kenneth Blaine would become its president upon Walter Blaine's retirement or death. The plan was sent to Rolscreen it maintains, but neither party could locate the document. In his deposition Walter Blaine testified that a Rolscreen officer orally approved the plan, saying it was the best he had seen. Products asserts that this approval amounted to a promise by Rolscreen that the distributorship would continue indefinitely, barring some completely unforeseen problem.[3] Products claims it based the expansion of its business on the understanding that Kenneth Blaine would succeed his father.

Both sides view Missouri law as controlling. Under it the elements of a tortious interference claim are:

(1) a contract or valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages.

*Nazeri v. Missouri Valley College*, 860 S.W.2d 303 (Mo.1993). *A.L. Huber & Son, Inc./Clevenger Homes, Inc. v. Jim Robertson Plumbing, Inc.*, 760 S.W.2d 496, 499 (Mo.Ct. App.1988). The elements of a promissory estoppel claim are:

(1) a promise; (2) detrimental reliance on the promise; (3) injustice can be avoided

---

3. The example used by Walter Blaine during his deposition was that Rolscreen would not be bound by the succession plan if Ken Blaine were to become insane.

only by enforcement of the promise; and (4) the promisor should have or did in fact clearly foresee the precise action which the promisee took in reliance.

*A.L. Huber & Son, Inc./Clevenger Homes, Inc. v. Jim Robertson Plumbing, Inc.,* 760 S.W.2d 496, 498 (Mo.Ct.App.1988); *see also In re Jamison's Estate,* 202 S.W.2d 879, 886 (Mo.1947).

■ The district court concluded that Products could not prevail on either claim because it could not prove the existence of a valid business relationship or expectancy for the tortious interference cause of action and did not have sufficient evidence of a binding promise for the promissory estoppel claim.

■ We review a grant of summary judgment de novo; like the district court, we must construe the evidence in the light most favorable to Products, the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate where there is no genuine issue of material fact for trial and the moving party is entitled to judgment as a matter of law. *Id.* at 247–48, 250, 106 S.Ct. at 2509–10, 2511. The nonmoving party must show that there is some genuine issue requiring trial. *Id.* at 250, 106 S.Ct. at 2511.

The parties entered into a formal distribution agreement in 1983. That agreement required Rolscreen's written consent before a sale or transfer of any distributorship and set out explicit procedures for termination of a distributorship. In 1985, Rolscreen distributed a policy statement on succession, which was integrated into the distribution agreement. Under that policy Rolscreen encouraged its distributors to develop succession plans, but reserved final approval of any plan until the time of transfer of a distributorship. "The distributor principal may nominate an ownership successor candidate who will be given first consideration for the Pella distributorship upon the principal[']s retirement. However, final selection will be based on Rolscreen Company's determination of the most highly qualified successor." For several years thereafter Walter Blaine executed an "Interim Management Successor Proposal" form distributed by Rolscreen. The one

page form expressly stated that each distributor could nominate a temporary successor, who would run the distributorship until Rolscreen could select a permanent successor who met its qualifications. The 1983 agreement and the 1985 policy conflict with the oral promise in 1982 and they supersede it. *See Centerre Bank of Kansas City, N.A. v. Distributors, Inc.,* 705 S.W.2d 42, 51–52 (Mo. Ct.App.1985) (integrated agreement supersedes prior contract if the two conflict).

■ Even if a factfinder were to find that Walter Blaine believed that the 1982 promise continued in force, Rolscreen would not be liable under either theory. Products could not recover under tortious interference because Walter Blaine did not challenge the legitimacy or applicability of the 1983 and 1985 written policies until this litigation began. Products has provided no evidence that Rolscreen knew that Walter Blaine expected his son to succeed him regardless of the explicit written policies governing succession. *See Massey v. Tandy Corp.,* 987 F.2d 1307, 1310 (8th Cir.1993). There is therefore no showing that Rolscreen had knowledge of a business expectancy that would support recovery or that it could have intentionally interfered with it. Products cannot succeed on a promissory estoppel theory because Rolscreen could not have foreseen that Products would rely on the 1982 promise after the later written agreement and integrated succession policy came into effect.

■ Products also argues that the district court erred when it denied its motions to transfer this case to Missouri. The standard of review on this claim is abuse of discretion. *Everett v. St. Ansgar Hospital,* 974 F.2d 77, 79 (8th Cir.1992). Products argues that the majority of witnesses and records are in Missouri, Missouri law applies to most of the claims, and it was less able to afford litigation in a foreign forum. On the other hand Rolscreen is headquartered in Iowa and brought suit first and in its home state. The states are adjacent, so the burden on Products and its Missouri witnesses was not particularly onerous, and there is no evidence that the venue prejudiced the out-

come of the trial. There was no abuse of discretion in denying the motions to transfer.

## III.

Products also challenges several rulings made by the district court related to the trial. Products argues that the court erred by bifurcating the trial, by excluding several exhibits relating to its Illinois Franchise Disclosure Act counterclaim, and by refusing to give conclusive effect to an alleged admission by Rolscreen. Products also claims it was prejudiced by two jury instructions.

### A.

■■■■ Products argues that the district court should not have bifurcated the issues for trial because bifurcation served no practical purpose and confused the jury. It claims a new trial is necessary. We review the trial court's decision to bifurcate for abuse of discretion. *Beeck v. Aquaslide 'N' Dive Corp.*, 562 F.2d 537, 541 (8th Cir.1977); *Counts v. Burlington N.R.R. Co.*, 952 F.2d 1136, 1139 (9th Cir.1991). District judges should be given considerable latitude in deciding the most efficient and effective method of disposing of the issues in a case, so long as a party is not prejudiced. No evidence of prejudice or abuse of discretion has been shown in this case.

### B.

■■■ One counterclaim asserts that Rolscreen terminated the distribution agreement without good cause and therefore violated the Illinois Franchise Disclosure Act. Ill. Rev.Stat. ch. 121½, para. 1719(a), 1721 (*now codified at* 815 Ill.Compiled Stat. 705/19, 705/21 (West 1993)). It is Rolscreen's position that Products was not a franchisee under the act. To qualify as a franchisee during the period in question, Products would have had to pay at least one hundred dollars in franchise fees. Such fees are defined both by statute and regulation. Ill.Rev.Stat. ch. 121½, para. 1703(c)(14) (1980), (*now codified*

*at* 815 Ill.Compiled Stat. 705/3 (West 1993)); 14 Ill.Admin.Code 200.104–.108 (1984).

The district court concluded before trial that money spent on windows which were part of the structures of Products' stores could not be considered statutory franchise fees. Based on this legal conclusion, the court excluded several exhibits and instructed the jury not to consider expenses for structural windows as franchise fees. The jury found that Products was not a franchisee, and the court then dismissed the Illinois statutory count.

Products argues that the windows installed in its Illinois stores were Rolscreen windows and that the money spent on those windows should be considered franchise fees. The windows served as sales displays of Rolscreen products, and Rolscreen encouraged Products to open additional stores. In Products' view this effectively required it to purchase the windows.

The district court properly decided as a matter of law that the price of structural windows could not be considered a franchise fee. Under 14 Ill.Admin.Code 200.105, only "required" indirect payments are considered franchise fees. Products was not required to buy Rolscreen windows. Although Rolscreen may have encouraged Products to open additional sales locations, it did not require Products to do so. Rolscreen did not require Products to purchase Rolscreen windows for its stores; Products was free to use windows made by any manufacturer. Because the payments for structural windows were not required, it is of no consequence that they may have been used for displays of Rolscreen products. The district court properly excluded evidence of those payments and instructed the jury accordingly.[4]

### C.

■■■ Products also argues that the district court erred in refusing to give conclusive effect to Rolscreen's responses to several requests for admissions under Federal

---

4. After trial the district court dismissed Products' counterclaim under the Illinois Franchise Disclosure Act. Products concedes that dismissal of this claim was proper if both the court's instruc-

tion to the jury and its decision to exclude evidence of structural window purchases were proper. *See also* section IV.B, *infra.*

Rule of Civil Procedure 36. It argues that Rolscreen had admitted in responses to requests for admissions in July 1992 that it had terminated the distribution agreement on April 30, 1992 and that the district court should have given conclusive effect to those responses.[5] There would then have been no need to try the termination issue. After Rolscreen moved to withdraw or amend the responses, the district court allowed them to be read to the jury as evidence of termination rather than giving them conclusive effect.

After carefully reviewing the record, we find no reversible error by the trial court on its handling of these discovery responses. Issues change as a case develops, and the relevance of discovery responses is related to their context in the litigation. In context these requests and responses had aspects of ambiguity. In terms of the relationship between the parties and their agreement, the word "terminated" did not have a single meaning. The word took on added uncertainty because Rolscreen had repeatedly stated it would end the distributorship on a certain date and then granted an extension to Products. That uncertainty was heightened by the timing of the requests in July 1992. At that point Products had signed a sale agreement but had not yet closed with its purchasers, the parties were still conducting business with one another, and two lawsuits were pending in different districts.

■■■ The district court was in the best position to assess the significance of these responses, and we cannot say that it erred in allowing the jury to consider them along with the other evidence. The conclusive effect envisioned by the rule may not be appropriate where requests for admissions or the responses to them are subject to more than one interpretation.[6] *Coca-Cola Bottling Company of Shreveport, Inc. v. Coca-Cola Co.*, 988 F.2d 414, 425 (3rd Cir.) (applying de novo review to affirm trial court decision admitting responses as "mere evidence" rather than treating them as conclusive), *cert. denied*, ── U.S. ──, 114 S.Ct. 289, 126 L.Ed.2d 239 (1993). *See also* Fed.R.Civ.P. 36(b); *Bergemann v. United States*, 820 F.2d 1117, 1121 (10th Cir.1987) (applying abuse of discretion standard to affirm trial court decision permitting withdrawal of failure to respond).

### D.

On appeal Products also raises objections to the jury instruction on termination. It contends that termination should not have been defined in an instruction, that its own definition should have been used if one were necessary, and that the definition of constructive termination was legally incorrect. Products also argues that the instruction mixed issues of breach of contract with termination and that it defined actual termination too narrowly. Rolscreen argues that Products did not raise most of these objec-

5. The relevant discovery was:

REQUEST NO. 6: Rolscreen terminated St. Louis on December 1, 1991.
ANSWER: Denied. Further answering, Rolscreen set forth its position regarding termination in its April 23, 1992 letter to Walter A. Blaine, a copy of which is attached hereto and incorporated herein. As the letter explains, Rolscreen terminated its relations with St. Louis under the Distribution Agreement on April 30, 1992. It has, thereafter, engaged in a business relationship during which it has accepted orders from St. Louis as tendered as a courtesy to allow St. Louis the opportunity to complete a proposed sale to Richard Wagner and Preston Fancher.
REQUEST NO. 7: Rolscreen terminated St. Louis on March 1, 1992.
ANSWER: Denied; see answer to Request No. 6.

REQUEST NO. 8: Rolscreen terminated St. Louis on March 15, 1992.
ANSWER: Denied; see answer to Request No. 6.
REQUEST NO. 9: Rolscreen has not yet terminated St. Louis.
ANSWER: Denied; see answer to Request No. 6.
REQUEST NO. 10: St. Louis can remain a distributor until a new distributor is appointed by Rolscreen.
ANSWER: Denied; see answer to Request No. 6.
REQUEST NO. 11: Rolscreen has not appointed a replacement distributor for St. Louis.
ANSWER: Admitted.

6. For similar reasons, we agree with the district court's conclusion that judicial and equitable estoppel should not be applied to bind Rolscreen to its earlier responses and pleadings.

tions at trial and that they are without merit in any event.

■■■■ An objection to a jury instruction must distinctly state the specific error alleged by the party. Fed.R.Civ.P. 51; *Tinnon v. Burlington N.R.R. Co.*, 898 F.2d 1340, 1343 (8th Cir.1990). If an objection is stated with particularity, the instruction must be reviewed to see if it fairly and adequately states the law on the point raised. *American Business Interiors, Inc. v. Haworth, Inc.*, 798 F.2d 1135, 1139 (8th Cir.1986). The mere submission of an instruction by a party will not be considered an objection raising any differences between the instruction requested and the one given. *Gander v. Mr. Steak of Sun Ray, Inc.*, 774 F.2d 920, 923 (8th Cir.1985).

■■■■ Our review of the trial transcript reveals only one specific objection by Products. It argued that termination should not be defined and that, if it were, a short definition it proposed should be used. The district court has broad discretion to formulate instructions. *American Business Interiors*, 798 F.2d at 1141. Termination was a key issue in this case, and the court was well within its discretion in choosing to instruct the jury on its meaning and in using the definition it did. The trial court is not obligated to give any particular form of instruction so long as the instruction as a whole fairly and adequately covers the relevant law. *Id.*

■■■■ Products' other objections were too general to meet the specificity requirement of Federal Rule of Civil Procedure 51. Where there is no objection sufficiently specific "to bring into focus the precise nature of the alleged error," we will reverse only if the instruction amounts to plain error. *Hughes v. Box*, 814 F.2d 498, 502–03 (8th Cir.1987) (*quoting Palmer v. Hoffman*, 318 U.S. 109, 119, 63 S.Ct. 477, 483, 87 L.Ed. 645 (1943)). The purpose of this requirement is to assist the court in giving correct instructions on the law to the jury. Since Products did not sufficiently state its other objections at the

time of trial, we review for plain error to see if this is an extraordinary case in which an error "has seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Phillips v. Parke, Davis & Co.*, 869 F.2d 407, 409 (8th Cir.1989) (citation omitted). Our review of the instruction on termination does not disclose such an error.

## IV.

Products also challenges several of the district court's post trial decisions. After Products made an oral proffer of the evidence it intended to present during the second phase of trial, the district court concluded that it had insufficient evidence to proceed further and granted Rolscreen's motion to dismiss the remaining causes of action: recoupment, prima facie tort, and breach of contract.[7] It then ordered summary judgment in Rolscreen's favor and denied Products' motion for judgment as a matter of law or, in the alternative, a new trial. Products complains about the dismissal, the process used, and the denial of its post trial motion.

## A.

■■■■ A grant of summary judgment is reviewed de novo and all evidence of the nonmoving party is to be believed. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). The nonmovant must present more than a scintilla of evidence and must advance specific facts to create a genuine issue of material fact for trial. *Id.* at 247–48, 255, 106 S.Ct. at 2513–14. We must decide whether the nonmoving party has presented evidence "from which a reasonable jury could return a verdict for the nonmoving party." *Davis v. Fleming Companies, Inc.*, 55 F.3d 1369, 1371 (8th Cir.1995).

■■■■ Products argues that Rolscreen's termination of the distributorship denied it the opportunity to recoup its investment, particularly in a south St. Louis location which opened a week after Rolscreen delivered the conditional notice of termination.

---

**7.** The counterclaim for violation of the Illinois Franchise Disclosure Act was also dismissed at this point. *See* section III.B, *supra*.

Under Missouri law, a party to an agency or franchise contract may sometimes recover the reasonable value of its investment, made in reliance on the contractual relationship, before termination by the other party. *See Bain v. Champlin Petroleum Co.*, 692 F.2d 43, 48 (8th Cir.1982); *A.H. Gibbs v. Bardahl Oil Co.*, 331 S.W.2d 614, 621–22 (Mo.1960); *Red–E–Gas Co. v. Meadows*, 360 S.W.2d 236, 242 (Mo.Ct.App.1962). Because the jury found that Rolscreen did not terminate the contract, recoupment is not available under Missouri law. *See Gibbs*, 331 S.W.2d at 621–22.; *see also* Mo.Rev.Stat. § 407.400–.410.

 Products' counterclaim for prima facie tort alleged that Rolscreen terminated the distribution agreement for wrongful purposes. Under Missouri law, a prima facie tort must be based on an independent duty to the plaintiff, not one arising from a contract. *State ex rel. William Ranni Associates, Inc. v. Hartenbach*, 742 S.W.2d 134, 140 (Mo.1987) (en banc). Here the distributorship is a creation of contract, and its dissolution is governed by contract law. Because Products presented no evidence of any action by Rolscreen which would be "an independent tort in the absence of a contract," *id.*, it could not make out a claim for prima facie tort.

 The final counterclaim on which summary judgment was entered was for breach of contract. Rolscreen could not have breached the alleged 1982 succession plan because it was superseded by the distribution agreement, but Products also argues that Rolscreen violated the policy on distributor changes integrated into the agreement. Products claims that Rolscreen planned to terminate it even though it had never been placed on an internal list of substandard distributors. Such placement was not a contractual requirement, however. Rolscreen met its contractual obligations by relying on its market penetration statistics.[8] Products also argues that its performance was not "unsatisfactory" as required by the distribution agreement for conditional termination and that other distributors had poorer records. The performance of others was irrelevant because the agreement required only that Products' performance be unsatisfactory, and the negative income and falling penetration statistics were a reasonable indicator of unsatisfactory performance. *See Hickham v. Chronister*, 792 S.W.2d 631, 633 (Mo.Ct.App.1989) (assessment of unsatisfactory performance must be made both reasonably and in good faith).[9]

 Products also argues that Rolscreen breached the duty of good faith implied in all contracts for the sale of goods in Missouri. Mo.Rev.Stat. § 400.1–203. *See Danella Southwest, Inc. v. Southwestern Bell Telephone Co.*, 775 F.Supp. 1227, 1235–37 (E.D.Mo.1991) (reviewing cases on implied duty of good faith). The undisputed evidence regarding Rolscreen's actions after it gave conditional notice cannot be reconciled with a finding of bad faith. Rolscreen unilaterally extended the termination date at least twice to allow Products to consummate a sale. In the end, Products had more than a year to dispose of its assets, a longer period than would have been available under the normal termination provision. Had Rolscreen's motive been to install its former vice president at Products, there is no reason it would have pursued the termination after it became clear he could not afford to buy the distributorship. Rolscreen had no legal obligation to accept Kenneth Blaine as the permanent successor to his father, so its failure to do so cannot be bad faith. Finally, Products presented insufficient evidence that Rolscreen interfered with either the operation of its business or its efforts to sell its assets. Products' allegations of bad faith are inconsistent with the undisputed facts.

These and similar breach of contract theories advanced by Products did not present genuine issues of material fact for trial.

8. Products also notes that Rolscreen did not mail the conditional notice by certified mail, return receipt requested, as required by the distribution agreement. This breach was not material and caused no damage or prejudice to Products.

9. Products asserts that *Hickham* requires that the question of reasonableness must always be submitted to the jury. *Hickham* does not so hold. The plaintiff must present sufficient evidence of unreasonableness to create a material issue of fact.

Summary judgment on this counterclaim, like the others dismissed after the first phase of trial, was therefore proper.

### B.

■ Products also argues that dismissal of the counterclaims was improper because it did not receive sufficient advance notice that such a motion would be considered. After the jury's verdict in phase one of the trial was returned on a Friday, the court told the jury to return on Tuesday and counsel to meet with him on Monday to discuss the case. At the Monday conference Rolscreen made a motion to dismiss which the district court treated as one for summary judgment. Both parties were informed of the conference several days in advance and knew the case was to be discussed. The parties were in trial and would have been expected to go forward with phase two on the following day if the remaining counterclaims had not been dismissed. This situation was unlike a summary judgment motion brought early in a case when counsel should not be expected to address issues of proof without the ten day notice provided in Federal Rule of Civil Procedure 56.

■ Although Products now complains about the procedure, it did not make a contemporaneous objection regarding notice. While it expressed reluctance to detail its evidence in the presence of opposing counsel, Joint Appendix at 871–73, and opposition to the bifurcation, *id.* at 861, it did not complain about any lack of notice. Where no contemporaneous objection is made to the sufficiency of notice prior to the grant of summary judgment, the claim is waived. *Shur–Value Stamps, Inc. v. Phillips Petroleum Co.*, 50 F.3d 592, 594–95 (8th Cir.1995). Furthermore, Products has not shown that it was prejudiced by the procedure or that summary judgment was not warranted at this stage of the case.

### C.

■ Finally Products argues that the district court erred by denying its motion for judgment as a matter of law or, in the alternative, for a new trial. Products' motion raised many of the same issues presented in this appeal. We review a motion for judgment as a matter of law to determine if there was sufficient evidence to support the jury's verdict, and we resolve all evidentiary and inferential conflicts in favor of the nonmoving party. *Nelson v. Boatmen's Bancshares, Inc.*, 26 F.3d 796, 800 (8th Cir.1994). Having reviewed the record, we find there was ample evidence to support the jury's conclusions that Rolscreen did not terminate the distribution agreement and that Products was not a franchisee. The motion for judgment was properly denied. We review a denial of a motion for new trial for abuse of discretion. *Id.* Products has made no showing that the district court abused its discretion in denying the motion for a new trial.

### V.

Having carefully examined the record and having thoroughly considered the arguments of the parties, we affirm the judgment entered in the district court for the reasons stated.