# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1828

_____

| | | |
|---|---|---|
| Vicky Meyers, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Nebraska Health and Human Services; | * | |
| Joyce Starke, Individually and in Her | * | [TO BE PUBLISHED] |
| Official Capacity; Kathy Carter, | * | |
| Individually and in Her Official | * | |
| Capacity; and Darren Duncan, | * | |
| Individually and in His Official | * | |
| Capacity, | * | |
| | * | |
| Defendant - Appellee. | * | |

_____

Submitted: October 8, 2002

Filed: March 28, 2003

_____

Before BYE, LAY, and RILEY, Circuit Judges.

_____

BYE, Circuit Judge.

Vicky Meyers appeals from the entry of summary judgment in favor of defendants on her claims of retaliation and constructive discharge. We reverse in part and affirm in part, and remand for trial.

# I

Vicky Meyers worked as a Protection and Safety Worker for the State of Nebraska Department of Health and Human Services (HHS) from May 29, 1998, until she resigned on May 9, 2000. For most of that time Meyers was an "ongoing" case worker, meaning she monitored children in the care of HHS over the long term. Meyers was part of each child's Treatment Team that made placement and treatment recommendations to the courts. In that capacity Meyers appeared in court hearings as a representative of HHS and the Treatment Team.

In late 1999 Meyers came to disagree with the rest of the Treatment Team on the best placement for two brothers living with a foster family. Her supervisors agreed with the Treatment Team and, Meyers avers, pressured her to change her opinion. In early February 2000, a court hearing was held to determine where the brothers would be placed. During the hearing Meyers told the presiding judge the opinion of the Treatment Team and, at the judge's insistence, her own differing opinion. In late February, Meyers's supervisors changed her job duties from ongoing cases to "intake" duties. She alleges the change in responsibilities was a demotion in retaliation for her testimony regarding the brothers' placement.

As their titles would suggest, the duties of ongoing and intake workers differ. Ongoing workers are assigned to cases over the long-term and are more involved in making foster home placement and care decisions than intake workers. Ongoing workers appear in court as representatives of HHS, whereas intake workers do not. The duties of an intake worker include: being the first contact, by phone and in person, with members of the public reporting abuse and neglect of children; documenting all the information; evaluating the report; making the initial determination of appropriate service or response; directing callers to community and government resources; and referring new cases to an investigator or ongoing case worker as appropriate.

Meyers was paid the same in her new intake position as she had been as an ongoing worker. Her benefits and title remained the same, and she was not reprimanded either orally or in writing. She even remained in the same office where she had worked before the change in duties.

Meyers proffered some evidence showing her move to the intake position was a demotion. A supervisor told her the intake assignment was not considered a "full load" so they would find other "tasks" for her to do. Before her reassignment to intake duties, they were handled by a switchboard receptionist and a case aide with far less education, training and experience than Meyers. Meyers found the transfer from ongoing to intake personally demeaning, belittling and punitive, and avers other workers in the office looked at her differently following her reassignment.

Once transferred to her new duties Meyers was, she claims, micromanaged to a degree that made her continued employment intolerable, so she resigned. There is some evidence Meyers was "pulled out" of one training session, and asked not to attend another. But there is no evidence regarding the relevance or importance of the training or whether she was treated differently than coworkers. The sole evidence of micro-management was when her supervisor once told her not to use a yellow highlighter in a ledger used to record new cases.

Meyers filed this action pursuant to 42 U.S.C. § 1983 alleging the HHS and three supervisors violated her right to free speech under the First Amendment of the U.S. Constitution. She claims she was reassigned in retaliation for her testimony about the brothers' placement, and was then micromanaged and purposefully made so uncomfortable she was forced to resign.

The claims against HHS and the supervisors in their official capacities were dismissed early in the proceedings. The remaining defendants – the supervisors in their individual capacities – filed a motion for summary judgment on the ground they

were entitled to qualified immunity. The magistrate judge, presiding by consent, found Meyers failed to establish a constitutional violation because her reassignment to intake was not an adverse employment action. Therefore, the magistrate judge ruled the defendants enjoy qualified immunity from this action. On appeal, Meyers contends the magistrate judge erred by finding the reassignment was not adverse.

II

We review a grant of summary judgment de novo, applying the same standard as the district court. Jaurequi v. Carter Mfg. Co. Inc., 173 F.3d 1076, 1085 (8th Cir. 1999). Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be awarded to a party if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. When ruling on a summary judgment motion, a court must view the evidence "in the light most favorable to the nonmoving party." Dush v. Appleton Elec. Co., 124 F.3d 957, 962-63 (8th Cir. 1997) (citing F.D.I.C. v. Bell, 106 F.3d 258, 263 (8th Cir. 1997)). However, a "nonmovant must present more than a scintilla of evidence and must advance specific facts to create a genuine issue of material fact for trial." Bell, 106 F.3d at 263 (quoting Rolscreen Co. v. Pella Prods. of St. Louis, Inc., 64 F.3d 1202, 1211 (8th Cir. 1995)).

Qualified immunity shields government officials from suit unless their conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To establish a violation of a constitutional right, a plaintiff must show "she was engaged in constitutionally protected activity, that [the government official's] adverse action caused her to suffer an injury which would 'chill a person of ordinary firmness from continuing . . . in that activity,' and that the adverse action was motivated in part by . . . [the] exercise of her constitutional rights." Carroll v. Pfeffer, 262 F.3d 847, 850 (8th Cir. 2001) (quoting Bloch v. Ribar, 156 F.3d 673, 678 (6th Cir. 1998)).

A public employee's speech is protected by the First Amendment if it is on a matter of public concern. Connick v. Myers, 461 U.S. 138, 146 (1983). In order for speech to be on a matter of public concern, the speech must "be fairly considered as relating to any matter of political, social, or other concern to the community." Id. If it is, Meyers's right to comment on those matters must "be balanced with [HHS's] interest in 'promoting the efficiency of the public services it performs through its employees.'" Sparr v. Ward, 306 F.3d 589, 594 (8th Cir. 2002) (quoting Pickering v. Bd. of Educ. of Township High Sch. Dist. 205, 391 U.S. 563, 568 (1968)). The magistrate judge found, and we agree, Meyers's testimony to a court concerning the proper placement of the two foster brothers was a matter of public concern that outweighed the HHS's interest in promoting efficiency and was therefore protected by the First Amendment. See Bowman v. Pulaski Co. Special Sch. Dist., 723 F.2d 640, 644 (8th Cir. 1983) (holding question of what constitutes proper care and education of children is area of public concern).

For purposes of the motion for summary judgment defendants do not dispute the supervisors decided to reassign Meyers to intake because of her protected speech. As found by the magistrate judge, the timing of the reassignment, coupled with evidence of statements made at the time by the parties, does support a conclusion the supervisors changed Meyers's duties because of her speech. The only issue remaining, then, is whether the reassignment from ongoing cases to intake was an adverse action.

Acts short of termination may constitute adverse employment actions, however, not everything that makes an employee unhappy is actionable. Montandon v. Farmland Indus., Inc., 116 F.3d 355, 359 (8th Cir. 1997). Loss of status and prestige alone do not rise to the level of an adverse employment action. Ledergerber v. Stangler, 122 F.3d 1142, 1144 (8th Cir. 1997). To be actionable, the employment action must be "a material change in the terms or conditions of her employment." Id.; Fisher v. Pharmacia & Upjohn, 225 F.3d 915, 919 (8th Cir. 2000) (holding a transfer

or reassignment may rise to the level of an adverse employment condition if it is "a significant change in working conditions."). The magistrate judge found Meyers's reassignment to intake was not an adverse employment action because her pay, benefits and job title did not change, she was not reprimanded, and the difference in duties was not material. The magistrate judge concluded the transfer was merely an inconvenience that dissatisfied Meyers.

It is true Meyers's tangible employment terms and conditions – her pay and benefits – did not change when she was reassigned. But whether the changes in the intangible employment conditions were significant or material remains a disputed material fact. A supervisor told her the intake assignment was not considered a "full load," so they would have to find other "tasks" for her to do. Before her reassignment, intake duties were handled by a switchboard receptionist and a case aide with far less education, training and experience than Meyers. This evidence of a considerable downward shift in skill level required to perform her new job responsibilities, coupled with evidence of a work load reduced to the degree supervisors had to find other "tasks" to keep her busy, are sufficient to support a finding Meyers's reassignment was a significant and material change in her employment conditions. See Fisher, 225 F.3d at 919-20; see also Dahm v. Flynn, 60 F.3d 253, 257 (7th Cir. 1994) (noting employment action involving "a dramatic downward shift in skill level required to perform job responsibilities can rise to the level of an adverse employment action, even if the time required to perform the duties remains constant."); Fyfe v. Curlee, 902 F.2d 401, 405 (5th Cir. 1990) (concluding transfer from a "productive, satisfying position to a menial make-work one" is an adverse employment action for the purposes of § 1983 First Amendment claim). It is therefore appropriate for a jury to decide whether the reassignment was material. We reverse summary judgment on this claim and remand for trial.

Meyers's constructive discharge claim rests on a significantly weaker foundation. Even if she was reassigned in violation of her First Amendment rights,

there is insufficient evidence her working conditions in intake were deliberately made intolerable with the intent of making her leave. Knowles v. Citicorp Mortgage, Inc., 142 F.3d 1082, 1086 (8th Cir. 1998) ("A constructive discharge occurs when an employer deliberately renders an employee's working conditions intolerable with the intent of forcing the employee to leave the employment.").

Whether working conditions are sufficiently objectionable to support a constructive discharge claim is determined by an objective standard, not the employee's subjective feelings. Spears v. Mo. Dep't of Corr. and Human Res., 210 F.3d 850, 854 (8th Cir. 2000). The only evidence of an intolerable working environment in this case is: (1) she didn't like the reassignment; (2) she was told not to use a yellow highlighter in the ledger of new cases; (3) she was told not to attend two training sessions, the relevance of which is unknown; and (4) she was criticized by supervisors. Together, these facts do not meet the objective standard for an intolerable work environment. See id.; Breeding v. Arthur J. Gallagher & Co., 164 F.3d 1151, 1160 (8th Cir. 1999) (noting "'a feeling of being unfairly criticized or [enduring] difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign.'" (quoting Carter v. Ball, 33 F.3d 450, 459 (4th Cir. 1994))). We therefore affirm summary judgment on the constructive discharge claim.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.