Steven D. HANSON, Appellant,

v.

FEDERAL DEPOSIT INSURANCE COR-
PORATION, as Receiver for the New
Bank of New England, N.A., Appellee.

No. 92–3566.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 13, 1993.

Decided Jan. 13, 1994.

James P. Larkin, Bloomington, MN, argued (Thomas J. Seymour, on the brief), for appellant.

S. Alyssa Roberts, Washington, DC, argued, for appellee.

Before BOWMAN, MAGILL, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

MAGILL, Circuit Judge.

Steven D. Hanson (Hanson) appeals the district court's grant of summary judgment dismissing his claim seeking the imposition of a constructive trust on property to which the Federal Deposit Insurance Corporation (FDIC) holds legal title. We reverse the *D'Oench, Duhme* bar and remand this case to the district court for further proceedings consistent with this decision.

## I. BACKGROUND

Hanson claims the Bank of New England, N.A., (BNE) obtained legal title to his property through unlawful means. He consequently sought the imposition of a constructive trust on the property in his favor to prevent the FDIC, now the legal owner, from being unjustly enriched.

In July of 1985, Hanson Industries, Inc., (Hanson Industries) and Hanson, the president and majority stockholder of Hanson Industries, entered into corporate and individual loan agreements with BNE. Hanson Industries' loan agreement included a term loan amount, a revolving demand note, and a security agreement. The loan payments on the corporate loan were made through automatic withdrawals by BNE on an account maintained by Hanson Industries at BNE. Hanson also individually entered into several loan agreements with BNE that were secured in part by a second mortgage on a building owned by Hanson and leased by him to Hanson Industries. This building and its property (collectively, the property) are the subject of Hanson's claim.

BNE, in April 1986, claimed that Hanson Industries defaulted on its loan. However, Hanson alleges that all payments were current on the loan and had been paid through the automatic withdrawal system; Hanson contends that BNE, after claiming that Hanson Industries defaulted on its loan, reversed the automatic payments to create an appearance of default. Because of the cross-default provisions in the loan agreements, BNE demanded full payment on all loans owed by Hanson and Hanson Industries to it. Hanson further alleges that BNE converted funds deposited by account debtors into the Hanson Industries checking account, effectively closing the checking account and causing the dishonor of numerous checks. BNE purportedly also sent letters to trade debtors, customers, potential customers, and employees of Hanson Industries demanding payment to BNE of all monies due Hanson Industries.

In August 1986, BNE filed an action in Minnesota state court to collect on the defaulted loans (the collection action). Hanson responded by filing counterclaims asserting causes of action sounding in tort and contract. BNE ultimately received legal title to the property in a Minnesota state court title proceeding which had been consolidated with the collection proceeding.[1]

The United States Comptroller of the Currency in January 1991 declared BNE insolvent and appointed the FDIC as its receiver. The FDIC removed the consolidated state court actions to federal court. The FDIC then established New Bank of New England (NBNE) as a bridge bank, and the FDIC, as receiver, sold most of BNE's assets to NBNE. The assets sold to NBNE included Hanson's property. This claim seeking the imposition of a constructive trust on the property was filed by Hanson in November of 1991.[2]

1. BNE tried to foreclose on the property after the "defaults." The Minnesota state court initially denied BNE's request to foreclose pending resolution of the disputed issues, including Hanson's counterclaims. However, Hanson apparently defaulted on the first mortgage on the property, held by First Brookdale State Bank (First Brookdale), and after First Brookdale successfully foreclosed, BNE, as holder of the second mortgage,

was able to redeem the property from First Brookdale. The Minnesota state court, finding that BNE had properly redeemed the property as holder of the junior mortgage, then transferred legal title to BNE in a separate title action.

2. Before the claim was filed, NBNE had been placed in receivership, and the FDIC consequent-

The constructive-trust complaint alleged that BNE breached the express and implied terms of the corporate loan, personal loan, and mortgage loan; defamed Hanson; interfered with Hanson's business relations; interfered with Hanson's contractual relations; and in the process of obtaining legal title, abused process through *ex parte* contact with the state court. Essentially, Hanson contends that because NBNE and the FDIC had knowledge of Hanson's claims against BNE, any funds obtained by the FDIC through disposition of the property would unjustly enrich the FDIC.

When the FDIC[3] filed its motion for summary judgment on Hanson's claim for a constructive trust, it made three arguments in favor of summary judgment: (1) the constructive trust claim was an impermissible collateral attack on the prior state court property title proceeding, (2) federal statutory law[4] insulates the FDIC from *any claims* Hanson may have against BNE, and (3) Hanson cannot establish the elements of a constructive trust because he cannot establish that a fiduciary relationship existed between

him and the bank. In its memorandum in support of summary judgment, the FDIC conceded for purposes of summary judgment that the wrongdoings alleged by Hanson were true.

■ The district court granted the FDIC's motion for summary judgment based solely on the FDIC's second argument. The court found that the FDIC is protected against claims related to the wrongful actions of a failed financial institution unless the alleged actions fall within the federal statute's limited exceptions.[5] Title 12 U.S.C. § 1823(e),[6] the relevant statute, codifies the *D'Oench, Duhme* doctrine, which protects the FDIC from claims based upon secret agreements between the failed financial institution and the claimant. *See D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). Hanson appeals the district court's judgment arguing that his claim for a constructive trust is not based upon a secret agreement, and thus, the district court misapplied the statute.

---

ly replaced NBNE as the defendant in this action.

3. Although the summary judgment motion was filed by NBNE, in the interest of clarity, all motions and briefs filed by the defendant will be referred to as those of the FDIC.

4. Initially the defendant's brief in support of summary judgment argued that NBNE was insulated by 12 U.S.C. § 1823(e). The defendant then filed a supplementary brief arguing that because NBNE is a bridge bank, 12 U.S.C. § 1821(n)(4)(I) affords substantively the same protection as § 1823(e) and should form the basis for insulating NBNE. The district court's order granting summary judgment was based upon § 1821(n)(4)(I).

5. We agree with the FDIC's contention in its brief that the district court incorrectly based its decision on 12 U.S.C. § 1821(n)(4)(I). But, we find that although 12 U.S.C. § 1823(e) is the appropriate statutory provision applicable to the FDIC, both statutory sections are codifications of the *D'Oench, Duhme* doctrine, *see D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and authorities construing one section may be applied to the other. *See, e.g., Texas Refrigeration Supply v. Federal Deposit Ins. Corp.*, 953 F.2d 975, 979 (5th Cir.1992). Moreover, the relevant language is essentially identical in the two stat-

utes. In the interest of simplicity, we will refer only to "the statute," which for the purposes of this appeal is § 1823(e) although the district court incorrectly relied on § 1821(n)(4)(I). We find that here it makes no substantive difference which section the district court relied upon.

6. Section 1823(e) states:

**(e) Agreements against interests of Corporation**
No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—
(1) is in writing,
(2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
(3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
(4) has been, continuously, from the time of its execution, an official record of the depository institution.
12 U.S.C. § 1823(e) (Supp. IV 1992).

## II.  DISCUSSION

On appeal, the FDIC has significantly revised its arguments.  The FDIC now argues that Hanson's claims are barred because Hanson failed to bear his burden of production when he did not produce a written agreement satisfying the terms of § 1823(e), and it again argues that Hanson cannot establish the elements of a constructive trust under Minnesota law.  The FDIC abandoned its collateral-attack argument on appeal [7] and no longer contends that federal statutory law insulates the FDIC from *any claims* Hanson may have against BNE, the argument upon which the district court based its grant of summary judgment.

We review this grant of summary judgment de novo.  *See Rafos v. Outboard Marine Corp.*, 1 F.3d 707, 708 (8th Cir.1993).  And, we examine the record to determine whether it shows there is no genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law.  *Id.*

### A.  The *D'Oench, Duhme* Doctrine

■ The *D'Oench, Duhme* doctrine and its statutory progeny,[8] the basis upon which the district court granted summary judgment, are intended to "allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets." *Langley v. Federal Deposit Ins. Corp.*, 484 U.S. 86, 91, 108 S.Ct. 396, 401, 98 L.Ed.2d 340 (1987).  The doctrine requires that any agreement upon which a claim is based be memorialized in the bank's records and also be approved by "officially recorded action" on the part of the bank's board or loan committee.  *Id.* at 92, 108 S.Ct. at 401.  These requirements are intended to ensure against the fraudulent insertion of new terms in agreements when a bank appears destined to fail.  *Id.*

■ The FDIC argued to the district court that the statute "insulates the FDIC, in its corporate capacity, from any claims that relate to actions allegedly taken by the former Bank."  Def.Mem. of Law at 10.  The heart of the FDIC's argument to the district court was that pursuant to the statute, the FDIC is not a successor in interest to the former bank, and hence the FDIC was immune from liability.  In a supplementary memorandum in support of its motion for summary judgment, the FDIC refined its argument to state that it was not liable for the wrongful actions of a failed institution unless the *alleged wrongful actions* fell within the limited exceptions enumerated in the statute.

The district court adopted the FDIC's approach, finding that the statute protects the FDIC against claims "relat[ed] to the alleged wrongful actions taken by failed financial institutions ... unless the alleged actions fall within the limited exception set forth in [the statute]."  *Federal Deposit Ins. Corp. v. Hanson*, 799 F.Supp. 954, 959 (D.Minn.1992).  This finding by the district court untenably extends the reach of the statute.

■ The statute protects the FDIC from claims *based upon agreements* which decrease the FDIC's interest in an asset.  *See* 12 U.S.C. § 1823(e); *Langley*, 484 U.S. at 90, 108 S.Ct. at 400.  Unless that agreement is (1) in writing, (2) between the bank and the claimant and executed contemporaneously with the acquisition of the asset, (3) approved and recorded by the appropriate bank committee, and (4) from its inception is an official bank record, the claim based upon the agreement is barred.  12 U.S.C. § 1823(e).  When determining whether the statute bars a claim, a court must first determine whether the wrongdoings underlying the claim are based upon an agreement.[9] *See Langley*, 484 U.S. at 95, 108 S.Ct. at 403.

■ Hanson's claim seeks the imposition of a constructive trust, an equitable remedial measure which a court may impose under

---

7.  Because the FDIC has abandoned this argument and because the district court did not base its judgment upon this claim, we will not consider this argument.

8.  *See* 12 U.S.C. §§ 1821(n)(4)(I), 1823(e).

9.  The term "agreement" in the statute has been interpreted to include not only formal agreements but "a scheme or arrangement ... likely to mislead the banking authorities."  *Langley*, 484 U.S. at 93, 108 S.Ct. at 402.

specific conditions determined by state law. *See Wright v. Wright*, 311 N.W.2d 484, 485 (Minn.1981). The alleged wrongdoings which form the basis of Hanson's claim are both contract and tort claims.[10] But, only if the claim is based upon an agreement must it meet the underlying requirements of the statute. *See Garrett v. Commonwealth Mortgage Corp. of Am.*, 938 F.2d 591, 595 (5th Cir.1991). The district court never considered whether the underlying claim was based upon an agreement; instead, it simply found that it did not meet the "limited exception"[11] in the statute.

We have explicitly held it would be an extension of the *D'Oench, Duhme* doctrine to apply it to actions sounding solely in tort. *Astrup v. Midwest Fed. Sav. Bank*, 886 F.2d 1057, 1059 (8th Cir.1989). The tort alleged in *Astrup* was breach of fiduciary duty to a co-venturer: such a tortious cause of action may exist independent of any agreement. This is not to imply that all tort actions escape the *D'Oench, Duhme* bar. Tort actions can be based upon agreements, and such tort-based actions could be barred by the statute. *See Langley*, 484 U.S. at 92–93, 108 S.Ct. at 401–02 (claim of fraud in the inducement still triggers the application of § 1823(e) because it does not cause the promise to lose its status as an agreement). For example, actions sounding in tort but based upon unwritten or secret agreements between the parties are barred by the statute. *See, e.g., Oliver v. Resolution Trust Corp.*, 955 F.2d 583, 586 (8th Cir.1992) (breach of fiduciary duty claim barred to the extent it was based upon an asserted side agreement); *Timberland Design v. First Serv. Bank for Sav.*, 932 F.2d 46, 50 (1st Cir.1991) (dismissing claims sounding in tort that arose from an alleged secret side agreement); *Federal Deposit Ins.*

*Corp. v. Kasal*, 913 F.2d 487, 493 (8th Cir. 1990) (dismissing counterclaims of breach of contract, negligence, promissory estoppel, and misrepresentation because the claims were based upon a secret unwritten side agreement), *cert. denied*, 498 U.S. 1119, 111 S.Ct. 1072, 112 L.Ed.2d 1178 (1991).

A party may maintain a claim against a failed financial institution where that claim is based upon a tort wholly independent of any agreement. *See Astrup*, 886 F.2d at 1059. A party may also maintain a claim against a failed financial institution where that claim is based upon a written agreement meeting the requirements of the statute. *See* 12 U.S.C. § 1823(e). However, in this case, the district court did not find that the asserted torts underlying the constructive trust claim were based upon or arose from an agreement; nor did the district court find that the express loan agreements failed the statutory requirements. *See supra* at 7. Moreover, the record before us would support neither finding. Because the district court granted the FDIC's summary judgment motion based upon an overly broad interpretation of the statute, we find that the district court erred when it granted summary judgment on this basis.

### B. Failure to Produce a Written Agreement

We find no merit to the FDIC's contention that we should affirm the district court's grant of summary judgment because Hanson failed to produce any written agreement satisfying the terms of § 1823(e). The FDIC conceded for purposes of summary judgment the existence of the express loan agreement.[12] The FDIC never asserted that

---

10. Hanson alleges that BNE (1) breached the express terms of their loan agreements; (2) interfered with Hanson's ability to conduct his business, hire, terminate, and compensate his employees; (3) defamed Hanson; and (4) interfered with contractual relationships between Hanson and the lessee of the contested property. Hanson's second through fourth claims all sound in tort, but these claims do not necessarily arise from any agreement.

11. The term "limited exception," used by both the FDIC and the district court, is inappropriate

in the context of this statute. The statute, rather, specifies the requirements of a valid agreement diminishing the FDIC's interest in an asset.

12. Specifically, the FDIC conceded (1) the existence of the loan and mortgage agreements, (2) the wrongful default under the Hanson Industries loan agreement, (3) the unlawful activities directed towards Hanson Industries and Hanson, and that (4) the unlawful activities caused the default of the First Brookdale mortgage and subsequent loss of the property by Hanson to BNE.

the express loan agreement did not meet the requirements of the statute. Instead, it asserted immunity from liability unless the wrongful actions, not an agreement, fell within the statutory exception.

In a summary judgment motion, the moving party, here the FDIC, bears the initial burden of proving that summary judgment is appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). At a minimum, the moving party must demonstrate that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. *Id.* at 331, 106 S.Ct. at 2556 (Brennan, J., dissenting).[13] If the moving party has no evidence negating an element of the case, it must nevertheless affirmatively show the absence of evidence in the record. *Id.* at 332, 106 S.Ct. at 2557. The FDIC must have done more than allege immunity from suit and a general lack of compliance with the statute. Because the FDIC conceded the existence of the loan agreements, the FDIC would have needed to have affirmatively pointed to evidence or the lack thereof that the agreements were not (1) written, (2) between the bank and Hanson, (3) approved or recorded by the appropriate bank committee, or (4) continuously from the time of execution a bank record. *See* 12 U.S.C. § 1823(e). The FDIC did not base its motion on these arguments; instead, it relied on a misinterpretation of the statute. It cannot now impose this burden belatedly on Hanson.

### C. Elements of a Constructive Trust Claim

As an alternative basis for affirming the district court, the FDIC asserts that Hanson submitted no evidence to support his claim for a constructive trust and, thus, this complete failure of proof "renders all other facts immaterial." Appellee's Br. at 21. To establish a constructive-trust claim, the FDIC asserts Minnesota law requires that Hanson prove the existence of a fiduciary relationship and a breach of that relationship. Specifically, the FDIC asserts that Hanson cannot prove as a matter of law the existence of a fiduciary relationship. Minnesota law, however, does not require that Hanson prove a fiduciary relationship to establish a constructive trust claim. *See Wright*, 311 N.W.2d at 485.

Under Minnesota law, a constructive trust arises in favor of the person equitably entitled to property whenever legal title is obtained through fraud, oppression, duress, undue influence, force, crime, *or* taking improper advantage of a confidential or fiduciary relationship. *Id.; see also Spiess v. Schumm*, 448 N.W.2d 106, 108 (Minn.Ct.App. 1989) (finding there is no unyielding formula for a constructive trust, but rather a requirement that there be clear and convincing evidence that it be morally wrong to retain the property). Hanson, therefore, had no duty to establish the existence of a fiduciary relationship, nor need he have established evidence of any of the purported wrongdoings because the FDIC conceded for purposes of the summary judgment motion that the alleged wrongdoings were true. Hence, we also find without merit the FDIC's claim that Hanson failed to bear his burden to produce evidence of a constructive trust.

### III. CONCLUSION

Accordingly, because we find that the district court based its grant of summary judgement on an overly broad interpretation of the *D'Oench, Duhme* doctrine and its statutory progeny, we reverse and remand this case to the district court for further proceedings.

---

13. Justice Brennan agreed with the standards adopted by the majority but disagreed with the result reached by the majority.