_____

No. 96-1183
_____

Federal Deposit Insurance        *
Corporation,                     *
                                 *
          Appellee,              *
                                 *
     v.                          *
                                 *
Melvyn Bell,                     *
                                 *
          Defendant,             *   Appeal from the United States
                                 *   District Court for the
Darlene Bell,                    *   Eastern District of Arkansas.
                                 *
          Appellant,             *
                                 *
Bell Holdings, Inc.,             *
                                 *
          Defendant,             *
                                 *
Bell Equities, Inc.,             *
                                 *
          Appellant.             *

                        _____

          Submitted: November 18, 1996

              Filed: February 6, 1997
                        _____

Before RICHARD S. ARNOLD, Chief Judge, MAGILL, Circuit Judge, and
     LONGSTAFF,[1] District Judge.

                        _____

MAGILL, Circuit Judge.


     This case is a diversity action based on the Arkansas Fraudulent
Transfer Act, Ark. Code Ann. §§ 4-59-201-213, between

_____

     THE HONORABLE RONALD E. LONGSTAFF, United States District
Judge for the Southern District of Iowa, sitting by designation.

plaintiff the Federal Deposit Insurance Corporation (FDIC) and defendants Darlene Bell and Bell Equities, Inc.[2]  Darlene Bell and Bell Equities appeal the district court's[3] grant of injunctive relief and partial summary judgment against them, contending that the existence of a contingent liability on an asset transferred to Darlene Bell creates a question of fact regarding the value of that asset.  The FDIC contends that we do not have jurisdiction to decide this question at this time because it is a nonfinal order.  We hold that we do have jurisdiction and affirm.

## I.

Richardson Savings & Loan, the predecessor in interest to American Federal and, ultimately, the FDIC, made loans in 1986 and 1987 in the amounts of $11,550,000.00 and $519,819.20 to Melvyn Bell, the then-husband of Darlene Bell.  Melvyn Bell defaulted on the loans in 1988 and brought suit against American Federal for breach of contract.  American Federal counterclaimed for the default on the loans and, on July 31, 1991, obtained a judgment against Melvyn Bell for $11,127,467.70.

Meanwhile, on March 22, 1991, Darlene Bell filed a complaint for divorce against Melvyn Bell in Arkansas state court.  The divorce was granted on April 26, 1991, and the Bells entered into a property settlement agreement.  Pursuant to the agreement, Melvyn Bell retained ownership of Bell Holdings, while Darlene Bell

---

This action was originally brought on March 5, 1992, by the American Federal Bank, F.S.B. (American Federal) against Melvyn Bell, Darlene Bell, Bell Holdings, Inc. (Bell Holdings) and Bell Equities, Inc. (Bell Equities).  On June 29, 1994, Melvyn Bell and Bell Holdings were dismissed as defendants.  On August 3, 1994, Guaranty Federal Bank, F.S.B. (Guaranty Federal) was substituted as plaintiff in place of American Federal.  On May 1, 1996, the FDIC was substituted as plaintiff in place of Guaranty Federal.

The Honorable G. Thomas Eisele, United States District Judge for the Eastern District of Arkansas.

acquired ownership of Bell Equities.[4]  Based on the valuation schedules
submitted by the Bells to the state court, the assets distributed to Melvyn
Bell had a gross value of $33,663,067.00 and liabilities of $27,744,252.00,
for a net value of $5,918,815.00.  The assets distributed to Darlene Bell
had a gross value of $31,748,935.00 and liabilities of $24,422,585.00, for
a net value of $7,326,353.00.  The state court questioned Darlene Bell as
to the accuracy of the valuation schedules, and Bell confirmed that they
were accurate:

> THE COURT:  With respect to the valuations on the assets, I
> noticed that they're fairly even in terms of value.  It looks
> like Bell Holdings has about $34 million and you have about $32
> million assets, according to these sheets.  Do you feel
> comfortable with what has been disclosed to you about value and
> liability?
>
> MRS BELL:  I feel that's pretty accurate.  The gentlemen that
> worked with us on this, their livelihood depends on their
> accuracy, so I would imagine that they wouldn't mislead me
> because then they wouldn't have a job.

Order Granting Partial Summ. J. at 4 n.3 (Aug. 4, 1995) (quoting Tr. of
H'rg at 17-18), reprinted in Appellants' Add. at 4.

One of the assets acquired by Darlene Bell and held by Bell Equities
was Red Apple Enterprises, with a gross value of $5,500,000.00, liabilities
of $6,122,075.00, and a negative net value of $622,075.00.  See Appellants'
App. at 163 (valuation schedule).  A footnote indicated that this entry did
"not include contingent liability of $1.85 million related to Red Apple
Club notes currently owned by The Bank of Ozark."  Id.

---

The property settlement included a transfer of assets between
Bell Holdings and Bell Equities.  In addition, Darlene Bell
received 80% of Melvyn Bell's future net salaries as child support.
See Order Denying Defs.' Mot. for Summ. J. at 3-4 (Nov. 3, 1993),
reprinted in Appellee's Add. at 3-4.

On March 5, 1992, American Federal brought the instant diversity action against Melvyn Bell, Bell Holdings, Darlene Bell, and Bell Equities. Relying on the Arkansas Fraudulent Transfer Act,[5] American Federal alleged that Melvyn Bell had made a fraudulent transfer to Darlene Bell in their property settlement because he did not receive the reasonably equivalent value for the transferred assets.

During the years of discovery and litigation that followed, the district court granted partial summary judgment to American Federal and held, "as a matter of law, [that] Melvyn Bell was either insolvent at the time of the transfer [of property to Darlene Bell] or was rendered insolvent by the transfer within the meaning of [the Arkansas Fraudulent Transfer Act]." Tr. of Telephone Conference of October 18, 1993, at 8, reprinted in Appellants' App. at 30. On November 3, 1993, the district court denied summary judgment to the defendants, concluding that the instant suit was not barred as a defaulted compulsory counterclaim or by res judicata, the domestic relations exception, the full faith and credit doctrine, or quasi-judicial immunity. See Order Denying Defs'. Mot. for Summ. J., reprinted in Appellee's Add. at 1. Following a settlement agreement, Melvyn Bell and Bell Holdings were dismissed as defendants on June 29, 1994. Guaranty Federal thereafter became the successor in interest to American Federal and was substituted as plaintiff in this case on August 3, 1994.

---

The Arkansas Fraudulent Transfer Act provides, in part:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
. . .
(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation . . . .

Ark. Code Ann. § 4-59-204.

-4-

On August 4, 1995, the district court granted partial summary judgment to Guaranty Federal, holding that, based on the valuation schedules verified by Darlene Bell, Melvyn Bell had transferred at least $1,407,538.00 to Darlene Bell in excess of what he had retained. Dividing this in half, the district court held that Darlene Bell and Bell Equities were liable to Guaranty Federal for a minimum of $703,769.00. See Order Granting Partial Summ. J. at 5-6, reprinted in Appellants' Add. at 5-6. The district court also granted prejudgment interest to Guaranty Federal of 6% per annum from April 26, 1991, through November 15, 1995, in the amount of $160,693.41, postjudgment interest at 5.45% per annum until paid, and costs of $415.25, for a total judgment as of November 15, 1995, of $864,877.66. See Judgment (Nov. 20, 1995), reprinted in Appellants' Add. at 14.

On December 7, 1995, Darlene Bell and Bell Equities filed in the district court a Motion to Reconsider Judgment under Federal Rules of Civil Procedure 59(e) and 60(b), arguing that the court had erred by failing to consider the $1.85 million contingent liability described in the valuation schedules. See Defs.' Mot. to Recons. J. at 2 (Dec. 7, 1995), reprinted in Appellants' App. at 103. The district court denied this motion, stating that

> [t]he Court did consider the contingent liability. In fact, the defendants drew the contingent liability issue to the Court's attention in the defendants' Brief in Support of Response of Separate Defendants Darlene Bell and Bell Equities, Inc., to Plaintiff's Motion for Summary Judgment. . . . Even if the Court were to reconsider the issue the Court would maintain its position in relying upon the valuation schedules. It is generally held that speculative or contingent liabilities should not be considered in determining the net marital estate. See, e.g., Hansen v. Hansen, 302 N.W.2d 801 (S.D. 1981); see also Aaron v. Aaron, 281 N.W.2d 150 (Minn. 1979) (finding that if potential liability is too speculative, it should not be considered in the distribution of marital property). The defendants have offered no new evidence to support the position that the contingent liability is not speculative. The defendants

have not offered the notes themselves nor have they argued the terms of the notes.

Order Denying Mot. to Recons. J. at 2-3 (Dec. 21, 1995), <u>reprinted in part in</u> Appellants' App. at 100.

On December 19, 1995, the district court granted Guaranty Federal injunctive relief, enjoining Darlene Bell and Bell Equities from transferring or encumbering certain assets. The injunction was specifically premised on the need to protect the judgment entered in favor of Guaranty Federal and against Darlene Bell and Bell Equities. <u>See</u> Order Granting Permanent Inj. at 4 (Dec. 19, 1995), <u>reprinted in</u> Appellants' Add. at 10. On May 1, 1996, the FDIC, as successor in interest to Guaranty Federal, was substituted as plaintiff-appellee in this matter. Darlene Bell and Bell Equities now appeal the grant of injunctive relief and the grant of partial summary judgment holding them liable for at least $864,877.66.

## II.

The parties agree that the district court's grant of partial summary judgment was not a final order for purposes of determining whether this Court has jurisdiction. <u>See</u> 29 U.S.C. § 1291; <u>see also</u> Fed. R. Civ. P. 56(c) ("A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.").[6] The FDIC

---

While the grant of partial summary judgment determined Darlene Bell's and Bell Equities' liability to Guaranty Federal, the issue of damages has not yet been finally determined. Although the district court issued a judgment of $864,877.66, this amount was determined "solely on the basis of the valuation schedules as they were presented and approved by the chancellor in the state court proceedings." Order Granting Partial Summ. J. at 3 n.2, <u>reprinted in</u> Appellants' Add. at 3. There appears to be a factual dispute as to whether the valuation schedules overvalued Melvyn Bell's retained assets:

> The Bank [Guaranty Federal] has also alleged that Bell Holdings was overvalued by at least $7,842,450, based on the September 5, 1991, foreclosure sale of one of its properties, Market Street Plaza. While Market Street Plaza was valued at $12,592,450 on the schedules, it only

-6-

contends that this Court therefore has no jurisdiction to consider either the grant of injunctive relief or the grant of partial summary judgment. We disagree.

Under 28 U.S.C. § 1292(a)(1), this Court has jurisdiction over orders of the district court "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court . . . ." Here, the district court specifically granted an injunction prohibiting Darlene Bell and Bell Equities from disposing of property without notice to and consent from the Bank. See Order Granting Permanent Inj. at 4, reprinted in Appellants' Add. at 10.

The FDIC argues that, despite § 1292(a)(1)'s textual clarity, this Court does not have jurisdiction to hear an appeal of a grant of injunctive relief where "the injunctive order is merely incidental to the substantive relief sought and does not threaten to cause irreparable harm . . . ." Appellee's Br. at 11. This is simply an incorrect statement of the law of this Circuit. See, e.g., Morgenstern v. Wilson, 29 F.3d 1291, 1294-95 (8th Cir. 1994) ("[I]f an interlocutory order expressly grants or denies a request for injunctive relief, the [requirement of irreparable injury] need

---

brought $4,750,000 at the foreclosure sale. If the value of Market Street Plaza was accepted as its sale value, then the property received by Darlene Bell would be worth at least $9,249,988 [more] than that retained by Melvyn Bell.

Id. On the basis of this limited factual dispute, the district court held that "[i]f this case proceeds to trial, the Bank [Guaranty Federal] will be allowed to argue about the overvaluation of Market Street Plaza, in which case, it might be entitled to an even larger judgment against Darlene Bell and Bell Equities." Id.

-7-

not be met and the order is immediately appealable as of right under §
1292(a)(1).  By contrast, if an order merely has the practical effect of
granting or denying an injunction, the . . .  irreparable injury test must
be satisfied . . . ." (interpreting <u>Carson v. American Brands, Inc.</u>, 450
U.S. 79 (1981) (citations omitted))), <u>cert. denied</u>, 115 S. Ct. 1100 (1995).
Darlene Bell and Bell Equities have an appeal as of right under §
1292(a)(1) to the district court's grant of injunctive relief against them,
and we therefore have jurisdiction over this order of the district court.

In <u>Fogie v. Thorn Americas, Inc.</u>, 95 F.3d 645 (8th Cir. 1996), this
Court described to what extent an appellate court has jurisdiction to
review interlocutory orders of a district court that are related to an
appeal of injunctive relief:

> We have jurisdiction to review the district court's issuance of
> the injunction under 28 U.S.C. § 1292(a)(1) which provides for
> appeal of interlocutory orders granting or refusing to grant
> injunctions.  Our jurisdiction under section 1292(a)(1) also
> extends to the remainder of the appealed order to the extent
> the injunction is interdependent with the remainder of the
> appealed order.  Under this standard, we have jurisdiction to
> review all portions of the order that are dependent on the
> resolution of the issues necessarily resolved in reviewing the
> injunction order.  In other words, in addition to the
> injunction order, we may review other issues only if they are
> inextricably bound up with the injunction.  We need not
> undertake a review of issues whose resolution is not necessary
> to effectively review the injunction.

<u>Id.</u> at 648 (quotations and citations omitted).

We review the district court's grant of injunctive relief for abuse
of discretion.  <u>See</u> <u>Goff v. Harper</u>, 60 F.3d 518, 520 (8th Cir. 1995).  It
would not be possible for us to determine if the district court abused its
discretion in enjoining Darlene Bell and Bell Equities from encumbering or
transferring assets without also determining if the district court erred,
as a matter of law, in its

-8-

determination that Darlene Bell and Bell Equities were liable for fraudulently-transferred assets. The district court's grant of injunctive relief was specifically predicated on its holding that Darlene Bell and Bell Equities were liable to Guaranty Federal and upon its determination that its judgment in favor of Guaranty Federal should be protected. See Order Granting Permanent Inj. at 3-4, reprinted in Appellants' Add. at 9-10. If Darlene Bell and Bell Equities are not liable, then the district court necessarily abused its discretion in issuing the injunction. In the circumstances of this case, therefore, we conclude that we have jurisdiction to consider the district court's grant of partial summary judgment.

## III.

We review a grant of summary judgment de novo, applying the same standard as the district court. See Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 258 (8th Cir. 1996). A grant of summary judgment is proper if, after viewing the evidence in the light most favorable to the nonmoving party, there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See id.; see also Fed. R. Civ. P. 56(c). Mere arguments or allegations are insufficient to defeat a properly supported motion for summary judgment; a "nonmovant must present more than a scintilla of evidence and must advance specific facts to create a genuine issue of material fact for trial." Rolscreen Co. v. Pella Prods. of St. Louis, Inc., 64 F.3d 1202, 1211 (8th Cir. 1995). See also Kiemele v. Soo Line R.R. Co., 93 F.3d 472, 474 (8th Cir. 1996) ("The nonmoving party must do more than show that there is some metaphysical doubt as to the material facts, and where the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." (quotations, citations, and alteration omitted)); JRT, Inc. v. TCBY Sys., Inc., 52 F.3d 734, 737 (8th Cir. 1995) (A nonmoving party has the burden of demonstrating to the district court "that

at trial it may be able to put on admissible evidence proving its allegations." (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986))).

Darlene Bell testified in Arkansas state court that the valuation schedules used in her property settlement with Melvyn Bell were accurate. See Order Granting Partial Summ. J. at 4 n.3 (quoting Tr. of H'rg at 17-18), reprinted in Appellants' Add. at 4. Based on these valuation schedules, the district court determined that Melvyn Bell retained considerably less net assets than he transferred to Darlene Bell. See id. at 5, reprinted in Appellants' Add. at 5. Because of this inequity, the district court determined that, as a matter of law under the Arkansas Fraudulent Transfer Act, Melvyn Bell did not receive the reasonably equivalent value for the transferred property. See id. Based on this determination, the district court granted partial summary judgment on Darlene Bell's and Bell Equities' minimum liability for the excessive, and thereby fraudulent, transfer.

Darlene Bell and Bell Equities contend that there exists a question of material fact as to whether Melvyn Bell received the reasonably equivalent value for the property transferred to Darlene Bell. They argue that the district court erred in failing to diminish the net value of the assets transferred to Darlene Bell by the $1.85 million contingent liability associated with Red Apple Enterprises.[7] Because a question

Darlene Bell and Bell Equities also contend that, because the Arkansas state court that approved the Bells' property settlement had a statutory obligation to divide the Bells' marital property equally, see Ark. Code Ann. § 9-12-315, we should consider the Bells' assets to have been equally divided for the purposes of this diversity action. We reject this argument.

As noted by the district court:

We presume that a fifty-fifty split was intended under Arkansas law because the chancellor made none of the findings that are required before deviating [from] the presumption of an equal division of marital property. While the chancellor was understandably not concerned with dividing the property to the penny, particularly where the parties agreed with a division that was approximate[ly] an equal division, this Court is so concerned. Under Arkansas law, the Bank [Guaranty Federal], as a present creditor of an insolvent debtor, has the right to half of every dollar transferred by the debtor to Mrs. Bell over the fifty

-10-

exists as to the value of the

_____

Order Granting Partial Summ. J. at 5 n.5, <u>reprinted in</u> Appellants'
Add. at 5.  This construction is fully supported by the record of
the state court proceedings, in which the state court declared to
Darlene Bell that, "[w]ith respect to the valuations on the assets,
I noticed that they're <u>fairly even</u> in terms of value.  It looks
like Bell Holdings has about $34 million and you have about $32
million assets, according to these sheets."  <u>Id.</u> at 4 n.3 (quoting
Tr. of H'rg at 17-18) (describing gross assets, emphasis added),
<u>reprinted in</u> Appellants' Add. at 4. The valuation schedules show
that Melvyn Bell received $1,407,538.00 less in net value than
Darlene Bell.  While this disparity in net assets may appear
"fairly even" in a property settlement between consenting parties
pursuant to a marital dissolution, it is rather less even in an
action by a creditor to recover fraudulently-transferred assets
from an insolvent debtor.

contingent liability, Darlene Bell and Bell Equities contend that summary judgment was improper.  We conclude that this argument misapprehends the nature of a contingent liability and the burden placed on a nonmoving party to defeat a summary judgment motion.

A contingent liability is:

> One which is not now fixed and absolute, but which will become so in case of the occurrence of some future and uncertain event.  A potential liability; e.g. pending lawsuit, disputed claim, judgment being appealed, possible tax deficiency. . . .

Black's Law Dictionary 321 (6th ed. 1990) (citation omitted).  To assume that a contingent liability necessarily diminishes by its face amount the value of an asset would be

absurd; it would mean that every individual or firm that had contingent liabilities greater than his or its net assets was insolvent--something no one believes. Every firm that is being sued or that may be sued, every individual who has signed an accommodation note, every bank that has issued a letter of credit, has a contingent liability. . . . There is a compelling reason not to value contingent liabilities on the balance sheet at their face amounts, even if that would be possible to do because the liability, despite being contingent, is for a specified amount (that is, even if there is no uncertainty about what the firm will owe _if_ the contingency materializes). By definition, a contingent liability is not certain--and often is highly unlikely--ever to become an actual liability.

In re Xonics Photochemical, Inc., 841 F.2d 198, 199-200 (7th Cir. 1988). See also In re Chase & Sanborn Corp., 904 F.2d 588, 594 (11th Cir. 1990) ("It is well established, however, that a contingent liability cannot be valued at its potential face amount . . . .").

To correctly "value the contingent liability it is necessary to discount it by the probability that the contingency will occur and the liability become real." Xonics Photochemical, 841 F.2d at 200; see also In re Davis, 169 B.R. 285, 302 (E.D.N.Y. 1994) ("In order to value a contingent liability, a bankruptcy court must determine the likelihood that the contingency will occur, and multiply the total debt guaranteed by that probability."). Where a liability is contingent on an impossible or an extremely unlikely event, its value will be nothing or close to nothing, and will have negligible or no effect on the net value of an asset. In such a circumstance, a contingent liability need not be considered in determining the net worth of an asset. See Hansen v. Hansen, 302 N.W.2d 801, 802 (S.D. 1981) ("'Contingent liabilities that may never be paid or that may be paid only in part need not be deducted in determining net worth. Speculative contingent liabilities should not be considered in apportioning the parties' assets for purposes of a property division.'" (quoting Wallahan v. Wallahan,

284 N.W.2d 21, 26 (S.D. 1979)) (alterations and additional quotations omitted)).

In this case, Darlene Bell and Bell Equities have never submitted any evidence regarding the likelihood that the $1.85 million contingent liability associated with Red Apple Enterprises would ever materialize. As noted by the district court, "[t]he defendants have not offered the notes themselves nor have they argued the terms of the notes." Order Denying Mot. to Recons. J. at 2-3, reprinted in part in Appellants' App. at 100. Without such evidence, there was no rational means for the district court to assign a value to the contingent liability.[8] Because Darlene Bell and Bell Equities have failed to meet the burden placed on a nonmoving party to present evidence demonstrating that a material question of fact exists, see, e.g., Rolscreen, 64 F.3d at 1211, the

Indeed, we cannot even say that the value of the contingent liability was somewhere between $0 and $1.85 million, as it appears that the "liability" may have actually been an asset. Guaranty Federal alleged, on information and belief, that

> not only is the contingent liability referred to by the defendants no longer in existence, but litigation took place which resulted in a settlement under which Ms. Bell actually received rather than paid money.

Pl.'s Resp. to Defs.' Mot. to Recons. J. at 5 (citing in a footnote Richard H. Upton & R. Ryder Mortgage & Inv. Co. v. Red Apple Enters. Ltd. Partnership, Cleburne Chancery No. 94-31-1; and Stephen L. Gershner v. Melvyn Bell, Urban Enters., Inc., & Southwest Resorts, Inc., Pulaski Circuit No. 95-2649). Darlene Bell and Bell Equities did not challenge this recitation of subsequent events, but insisted that

> [w]hether the contingent liability was extinguished by acts subsequent to the transfer between the Bells is irrelevant and has no bearing on whether reasonably equivalent value was given, at the time of the transfer. To suggest otherwise lacks any legal basis or support.

Defs.' Reply to Pl.'s Resp. to Defs.' Mot. to Recons. J. at 4 (emphasis in original). Neither party has submitted the Arkansas cases cited nor has the issue been argued on appeal.

district court properly granted partial summary judgment.[9]

---

For the $1,850,000.00 contingent liability on Red Apple Enterprises to have reduced the value of Darlene Bell's transferred assets to the equivalent value of Melvyn Bell's retained assets, it would have been necessary, at the time of the transfer of assets, for there to have been at least a 76% likelihood that the contingent liability would occur ($1,850,000.00 x .7608313513514 = $1,407,538.00).  Darlene Bell and Bell Equities failed to present any evidence which could have supported such a finding and, as a matter of law, would have been unsuccessful on this point had the issue been tried by a jury.  Because of their failure to present any evidence supporting the valuation of the contingent liability, summary judgment was properly granted against them.  See JRT, Inc. v. TCBY Sys., Inc., 52 F.3d 734, 737 (8th Cir. 1995) (A nonmoving party has the burden of demonstrating to the district court "that at trial it may be able to put on admissible evidence proving its allegations." (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986))).  The dissent nevertheless asserts that:

> Because the moving party in the present case failed to properly support its motion for summary judgment regarding the valuation of the contingent liability, the nonmoving parties were not required to advance specific facts demonstrating that a genuine issue of material fact existed.  While it may have been more prudent to resist the summary judgment motion by advancing specific evidence creating a contested issue of material fact, Darlene Bell and Bell Equities' failure to do so should not result in the grant of partial summary judgment when the moving party failed to properly support its motion for summary judgment.

Dissenting Op. at 16-17 (citations and note omitted).  We disagree. It was not merely imprudent for Darlene Bell and Bell Equities to fail to advance evidence to support their allegations; it was necessarily fatal to their defense.  We do not allow a case to go forward to trial on the mere chance that a jury will disregard all evidence and accept the unsupported speculation of a party litigant.  See Gregory v. City of Rogers, 974 F.2d 1006, 1010 (8th Cir. 1992), cert. denied, 507 U.S. 913 (1993) ("To withstand the appellees' motion for summary judgment, the appellants had the burden of presenting evidence sufficiently supporting the disputed material facts that a reasonable jury could return a verdict in their favor.  The object of our review, then, is to determine whether the appellants submitted sufficient probative evidence that would permit a finding in their favor on more than mere speculation, conjecture, or fantasy." (citations, quotations, and alterations omitted)).

Because the district court properly granted partial summary judgment against Darlene Bell and Bell Equities, it did not abuse its discretion by granting injunctive relief to prevent the defendants from transferring or encumbering certain assets. See Ark. Code Ann. § 4-59-207(a)(3)(i) (provision of Arkansas Fraudulent Transfer Act authorizing "injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property"). Accordingly, we affirm both the district court's grant of partial summary judgment and its grant of injunctive relief.

LONGSTAFF, District Judge, concurring and dissenting.

I concur in Part II of the majority's opinion determining that this Court has jurisdiction to consider the district court's grant of partial summary judgment. The majority also affirms the district court's grant of partial summary judgment in Part III of its opinion. Because a question of material fact exists regarding whether Melvyn Bell received the reasonably equivalent value for his transferred property, I respectfully dissent to Part III of the majority's opinion.

As noted by the majority, a "nonmovant must present more than a scintilla of evidence and must advance specific facts to create a genuine issue of material fact for trial," to defeat a properly supported motion for summary judgment. Rolscreen Co. v. Pella Prods. of St. Louis, Inc., 64 F.3d 1202, 1211 (8th Cir. 1995). However, a "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Federal Rule of Civil Procedure 56(c)). In addition, in determining

-16-

whether summary judgment is proper, the evidence must be viewed in the light most favorable to the nonmoving party.  See Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 258 (8th Cir. 1996).

To support its conclusion that the moving party established its right to summary judgment as a matter of law, the majority initially relies upon the testimony provided by Darlene Bell in an April 26, 1991 hearing in state court concerning the approval of her property settlement agreement. In response to a question, Darlene Bell indicated that the "value and liability" in the schedules used in her property settlement agreement with Melvyn Bell were accurate.  It is true that the valuation schedules showed that Melvyn Bell received $1,407,538.00 less in net value, absent the contingent liability, than Darlene Bell.  However, the valuation schedules also showed that Darlene Bell incurred a 1.85 million dollar contingent liability as a result of the property settlement.  Construing Darlene Bell's testimony in the light most favorable to the nonmoving parties, I do not believe it supports the finding of an absence of a genuine issue of material fact concerning the issue of "reasonably equivalent value." Rather, her testimony indicates that she received reasonably equivalent value in the property settlement.

Second, the majority discusses the nature of a contingent liability in concluding that the moving party fulfilled its initial burden.  As recognized by the majority, a contingent liability should be discounted by the probability that the contingency will occur.  See In re Xonics Photochemical, Inc., 841 F.2d 198, 199-200 (7th Cir. 1988).  However, this does not mean that a contingent liability should not receive any value.

The record before the district court failed to give any indication as to what the proper valuation of the contingent liability, at the time of the property settlement agreement, should be.  Because the moving party in the present case failed to

-17-

properly support its motion for summary judgment regarding the valuation of the contingent liability, the nonmoving parties were not required to advance specific facts demonstrating that a genuine issue of material fact existed.[10]  See Heath v. John Morrell & Co., 768 F.2d 245, 249 (8th Cir. 1985) (reversing the grant of summary judgment because the moving party failed to properly support its motion for summary judgment even though the nonmoving party failed to present opposing evidence) (citing Adickes v. Kress & Co., 398 U.S. 144, 160 (1970); Stubbs v. United States, 428 F.2d 885, 888 (9th Cir. 1970), cert. denied, 400 U.S. 1009 (1971)).  While it may have been more prudent to resist the summary judgment motion by advancing specific evidence creating a contested issue of material fact, Darlene Bell and Bell Equities' failure to do so should not result in the grant of partial summary judgment when the moving party failed to properly support its motion for summary judgment.

Viewing the record in the light most favorable to the nonmoving party, the district court erred by concluding that the contingent liability should not receive any value.  Partial summary judgment regarding the value of the contingent liability and whether Melvyn Bell received reasonably equivalent value for the

---

Because the moving party, the FDIC, had no evidence demonstrating that the contingent liability was without value, for purposes of summary judgment, it must "affirmatively show the absence of evidence in the record" regarding the value of the contingent liability.  See Hanson v. F.D.I.C., 13 F.3d 1247, 1253 (8th Cir. 1994) (reversing the district court's grant of summary judgment because the moving party failed to demonstrate that there was no evidence negating an element of the nonmoving party's case).  As a result of the FDIC acknowledging the existence of the contingent liability by producing the valuation schedules to support their motion for summary judgment, "the FDIC would have needed to have affirmatively pointed to evidence or lack thereof" that the contingent liability was of no value.  See Id.  However, it failed to do so.  In addition, the FDIC did not base its summary judgment motion on the argument that Darlene Bell and Bell Equities could not produce any evidence to support their valuation of the contingent liability.  Rather, the FDIC asserted that the valuation schedule, on its face, indicated that Melvyn Bell did not receive reasonably equivalent value for the transferred property.

transferred property should not have been granted.  Therefore, I would reverse the district court's grant of partial summary judgment against Darlene Bell and Bell Equities.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.