# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3576

_____

Straights and Gays for Equality     *
(SAGE);  N.R. by Her Next Friend     *
and Parent S.R.; H.W. by Her Next     *
Friend and Parent M.W.,     *
    *
        Appellees,     *
    *   Appeal from the United States
      v.     *   District Court for the
    *   District of Minnesota.
Osseo Area Schools - District No. 279;     *
Larry A. McGee, Member &     *
Chairperson of the School Board of     *
Osseo Schools - District 279, in his     *
individual and official capacities;     *
Dean G. Henke, Member &     *
Vice Chairperson of the School     *
Board of Osseo Area Schools -     *
District 279, in his individual and     *
official capacities; John L. Nelson,     *
Member & Clerk of the School     *
Board of Osseo Area Schools -     *
District 279, in his individual and     *
official capacities; Kim Green,     *
Member & Treasurer of the School     *
Board of Osseo Area Schools -     *
District 279, in her individual and     *
official capacities; Linda J. Etim,     *
Member & Director of the School     *
Board of Osseo Area Schools -     *
District 279, in her individual and     *
official capacities; Judith G. Peterzen,     *
Member & Director of the School     *

Board of Osseo Area Schools -     *
District 279, in her individual and     *
official capacities; John O'Sulllivan, Jr., *
Superintendent of Osseo Area Schools - *
District 279, in his individual and     *
official capacities; Wendy Loberg,     *
Principal of Maple Grove Senior     *
High School, in her individual and     *
official capacities; Maple Grove Senior *
High School; Dr. James L. Smith,     *
former Interim Superintendent of     *
Osseo Area Schools - District 279,     *
in his individual capacity,     *
    *
         Appellants.     *

_____

Submitted: June 9, 2008
Filed: August 29, 2008

_____

Before SMITH, BOWMAN, and GRUENDER, Circuit Judges.

_____

SMITH, Circuit Judge.

The Osseo Area School District ("the School District"), Maple Grove High School ("MGHS"), and various school board members and school staff (collectively "the appellants") appeal from an order of the district court[1] granting partial summary judgment to Straights and Gays for Equality, N.R., and H.W. (collectively "SAGE"). The district court granted SAGE summary judgment on its Equal Access Act (EAA)[2]

_____

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

[2]20 U.S.C. § 4071 (2000).

claim and issued a permanent injunction that provides SAGE with the same access for meetings, avenues of communication, and other miscellaneous rights that are afforded to MGSH's student groups classified as "curricular." We affirm.

## I. *Background*

The relevant background facts in this case are set out in our previous opinion, in which we affirmed the district court's grant of a preliminary injunction on SAGE's EAA claim. *Straights and Gays for Equality (SAGE) v. Osseo Area Schools-Dist. No. 279*, 471 F.3d 908 (8th Cir. 2006) ("*SAGE I*"). On remand, SAGE moved the district court for partial summary judgment, seeking to make the preliminary injunction permanent. It contended that the appellants' refusal to allow SAGE the same access to school facilities and avenues of communication provided to other student groups violated the EAA. The district court granted SAGE's summary judgment motion on the EAA claim. The court concluded that the MGHS-designated "curricular" student groups of cheerleading, synchronized swimming, Spirit Council, and Black Achievers were actually noncurricular groups that received greater access than SAGE, in violation of the EAA. Thus, the district court imposed "a permanent injunction that accord[ed] SAGE the same access for meetings, avenues of communication, and other miscellaneous rights [as those] afforded to MGHS's 'curricular' groups."

## II. *Discussion*

"We review the district court's grant of injunctive relief for abuse of discretion." *F.D.I.C. v. Bell*, 106 F.3d 258, 263 (8th Cir. 1997). The district court predicated the injunction on its determination that certain student groups receiving more favorable access than SAGE were noncurricular. We examine first whether this conclusion is correct. *See id.* (stating that court of appeals could not determine whether district court abused its discretion in issuing injunction without also determining if district court erred, as a matter of law, in making its underlying determination). If the student groups at issue were properly labeled as curricular, the district court necessarily abused its discretion in issuing the injunction. *Id.* at 263 (stating that the district court

-3-

"necessarily abused its discretion in issuing the injunction" if its underlying determination was erroneous). Moreover, the district court issued the injunction after granting SAGE's motion for partial summary judgment, which we review de novo. *Id.* "[S]ummary judgment is proper if, after viewing the evidence in the light most favorable to the nonmoving party, there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.*; *see also* Fed. R. Civ. P. 56(c).

"Under the Equal Access Act, a public secondary school with a 'limited open forum' is prohibited from discriminating against students who wish to conduct a meeting within that forum on the basis of the 'religious, political, philosophical, or other content of the speech at such meetings.'" *Bd. of Educ. of the Westside Cmty. Sch. v. Mergens*, 496 U.S. 226, 235 (1990) (quoting 20 U.S.C. §§ 4071(a) and (b)). Specifically, the EAA provides:

> It shall be unlawful for any public secondary school which receives Federal financial assistance and which has a limited open forum to deny equal access or a fair opportunity to, or discriminate against, any students who wish to conduct a meeting within that limited open forum on the basis of the religious, political, philosophical, or other content of the speech at such meetings.

20 U.S.C. § 4071(a).

"A 'limited open forum' exists whenever a public secondary school 'grants an offering to or opportunity for one or more noncurriculum related student groups to meet on school premises during noninstructional time.'" *Mergens*, 496 U.S. at 235 (quoting 20 U.S.C. § 4071(b)). "Thus, a school's obligations under the EAA are 'triggered' even if the school only permits one noncurriculum group to meet. Once triggered the EAA forbids a school from prohibiting other groups, based on the content of their speech, from having 'equal access' to meet on school premises." *SAGE*

*I*, 471 F.3d at 911 (quoting *Mergens*, 496 U.S. at 236). The appellants concede that the EAA is applicable, as MGHS is a public secondary school that receives federal financial assistance, and MGHS maintains a limited open forum under the EAA.

Here, MGHS does not prohibit SAGE from meeting at the school or utilizing some avenues of communication, but it limits SAGE's access to communication avenues and meeting times and places. Curricular groups receive more extensive use of school communication avenues. Thus, the issue is not whether MGHS provides SAGE access to some avenues of communication but whether it provides equal access to available avenues of communication as provided to other noncurriculum related groups. We hold that it does not.[3]

As we discussed in *SAGE I*:

A "curriculum related student group" is one that

> directly relates to a school's curriculum if the subject matter of the group is actually taught, or will soon be taught, in a regularly offered course; if the subject matter of the group concerns the body of courses as a whole; if participation in the group is required for a particular

_____

[3]As we noted in *SAGE I*:

The appellants did not allege that SAGE's meetings could "materially and substantially interfere with the orderly conduct of educational activities with the school" or interfere with MGHS's ability to maintain order and discipline at the school. *Mergens*, 496 U.S. at 241, 110 S. Ct. 2356 (internal quotations and citation omitted). Therefore, our analysis is restricted to the issue of whether SAGE has equal access to the same avenues of communication as other noncurriculum related groups.

471 F.3d at 912 n.4.

course; or if participation in the group results in academic credit.

[*Mergens*, 496 U.S.] at 239–40. The circle of groups considered "curriculum related" has a relatively small circumference and does not include "anything remotely related to abstract educational goals"; instead, the Court limited the definition of "curriculum related student group" to support "Congress's intent to provide a low threshold for triggering the Act's requirements." *Id.* at 244, 240.

For example, a French club is directly related to the school's curriculum if the school teaches French in a regularly offered course or plans to teach French in the foreseeable future. *Id.* at 240. Likewise, a student government organization is directly related to the curriculum if it addresses matters relating to the body of courses offered by the school. *Id.* Also, both band and choir directly relate to the school's curriculum if they are offered as part of the school's regular curriculum. *Id.* at 246.

In contrast, although the EAA does not define "noncurriculum related student group," the Supreme Court has interpreted the phrase broadly to mean "any student group that does not *directly* relate to the body of courses offered by the school." *Id.* at 239 (emphasis in original). "Whether a specific student group is a 'noncurriculum related student group' will [ ] depend on a particular school's curriculum, but such determinations [are] subject to factual findings well within the competence of trial courts to make." *Id.* at 240. Additionally, courts must look to the school's "actual practice rather than its stated policy" in determining whether a student group is noncurriculum related. *Id.* at 246.

For example, a scuba-diving group is not directly related to the school curriculum, even if swimming is taught as a physical education class, when scuba diving is not taught in any regularly offered course at the school and does not result in academic credit. *Id.* at 245. Also, a chess club is a "noncurriculum related group" when no class requires participation in the club and participation in the group does not result in extra credit for a class. *Id.* Finally, a student service organization that helps to enhance students' civic responsibilities to the community is not

directly related to the curriculum where the subject matter of the group is not taught in a class. *Pope v. E. Brunswick Bd. of Educ.*, 12 F.3d 1244, 1253 (3d Cir. 1993) ("Here, the relevant subject matter of one unit of Mr. Koenigsberg's History course is poverty and homelessness. The subject matter of the Key Club is *not* poverty and homelessness, but community-related service and fund-raising activities. The history course and the Key Club accordingly have different subject matter.") (emphasis in original).

*SAGE I*, 471 F.3d at 911–12.

In *SAGE I* we upheld the district court's issuance of the preliminary injunction, finding that "cheerleading and synchronized swimming, like SAGE, are noncurriculum related groups" and "conclu[ding] that SAGE [was] likely to prevail on the merits of its EAA claim[.]" *Id.* at 913. The appellants challenge our previous findings regarding the classification of the cheerleading and synchronized swimming groups, asserting novel arguments that were not raised previously. We decline to address those new arguments and need not address the appellants' arguments regarding the Black Achievers student group. Rather, we conclude that the district court correctly found that the Spirit Council was a noncurriculum related student group mislabeled as a curriculum related group. The appellants thus violated the EAA by providing the Spirit Council with greater access to communication avenues than it provided to SAGE.

The School District contends that the Spirit Council is merely a subdivision of the Crimson Cabinet, the school's curriculum-based student government group, and "[a] school's student government w[ill] generally relate directly to the curriculum to the extent that it addresses concerns, solicits opinions, and formulates proposals pertaining to the body of courses offered by the school." *Mergens*, 496 U.S. at 240; *see also SAGE I*, 471 F.3d at 911 ("[A] student government organization is directly

related to the curriculum if it addresses matters relating to the body of courses offered by the school.").

Here, however, the undisputed facts demonstrate that the Spirit Council plans student activities at MGHS such as Homecoming, Snow Daze, Spring Fling, Prom, "and other events that foster a sense of positive school spirit and pride." These activities do not address concerns, solicit opinions, nor formulate proposals pertaining to the body of courses offered by MGHS. *Mergens*, 496 U.S. at 240. The Spirit Council's responsibilities do not "address[] matters relating to the body of courses offered by the school." *SAGE I*, 471 F.3d at 911. Thus, Spirit Council is not directly related to the MGHS curriculum.

Portions of MGHS's student government may well be curriculum related under *Mergens*. But, every student group placed as a subgroup of the student government does not automatically also qualify as curriculum related. The EAA would be too easily circumvented should merely placing favored groups within the rubric of student government suffice to classify them as curriculum related. We note that *Mergens* explained that a school's student government group "generally relate[s] directly to the curriculum *to the extent* that it addresses concerns, solicits opinions, and formulates proposals pertaining to the body of courses offered by the school." 496 U.S. at 240 (emphasis added). The record shows that the Spirit Council's function is social activity planning. It does not address academic or curricular issues relating to the body of courses offered at MGHS. We conclude that any curriculum-based qualities of MGHS's student government do not extend to the Spirit Council. Therefore, the district court's ruling that Spirit Council is noncurriculum based was correct, the grant of summary judgment on SAGE's EAA claim was proper, and the issuance of the permanent injunction was not an abuse of discretion.[4]

---

[4]*See Boyd County High School Gay Straight Alliance v. Bd. of Educ. of Boyd County*, 258 F. Supp. 2d 667, 687 (E.D. Ky. 2003) (ruling that school's executive councils were noncurriculum related student groups, noting that under *Mergens*

### III. *Conclusion*

Accordingly, the judgment of the district court is affirmed.

_____

student government groups relate directly to curriculum only "to the extent it addresses concerns, solicits opinions, and formulates proposals pertaining to the body of courses offered by the school," and the stated purpose of the executive councils included prom preparation, selecting class rings, and planning the senior trip, talent show, and senior t-shirts).